The Jeffersonville, Madison and Indianapolis Railroad Co. *et al. v.* Dunlap.

How. U. S. 263; *Frink* v. *Frink*, 43 N. H. 508; *Weed* v. *Weed*, 25 Conn. 337 ; *Hollister* v. *The Judges*, 8 Ohio St. 201. Judgment affirmed.

Filed Sept. 29, 1887.

———————◆———————

No. 13,703.

THE JEFFERSONVILLE, MADISON AND INDIANAPOLIS RAILROAD COMPANY ET AL. *v.* DUNLAP.

STATUTE.—*Repeal by Implication.*—Repeals by implication are not favored, but if a portion of a later statute will be destroyed by continuing any of the provisions of a prior one in force, the latter, to that extent, will be deemed repealed, notwithstanding a declaration in the later act that the prior one shall remain in force.

RAILROAD.—*Fencing Right of Way.*—*Act of April 13th, 1885, Did not Repeal Prior Statute.*—*Liability for Animals Killed.*—The act of April 13th, 1885 (Acts 1885, p. 224), relating to the fencing of railroad rights of way, did not repeal by implication the prior act on the same subject (R. S. 1881, section 4025, *et seq.*), and for a failure to fence at all places required by the prior statute, railroad companies are liable as previously, except so far as farm crossings and gates are concerned.

SAME.—*Joint and Several Liability of Owner and Lessee.*—*Incorporated Towns.*—*Platted Portions.*—*Procedure.*—The prior statute not being repealed, the corporation owning a railroad, and its lessee, etc., are jointly and severally liable for the killing of animals upon the track thereof within such portions of an incorporated town as are laid out and platted, if the right of way could have been fenced at the place of the killing, and the manner of commencing and prosecuting actions and of collecting judgments is the same as formerly.

SAME.—*Injury Must be Done by Cars or Engines.*—Under the act of April 13th, 1885, as well as under the prior act, railroad companies are not liable for the injury or killing of animals unless injured or killed by the cars or engines.

From the Johnson Circuit Court.

*S. Stansifer*, for appellants.

*S. C. Brown, R. M. Miller* and *H. C. Barnett*, for appellee.

ZOLLARS, C. J.—It is conceded by the pleadings that appellee's animal was killed upon appellants' track by a train of cars, within the limits of an incorporated town "laid out and platted into lots and blocks."

Negligence is not charged, nor is it contended that the railway company might not have fenced its right of way at the place where the animal went upon the track and was killed. Appellee's claim is, that appellants are liable under the statutes in relation to fencing railway tracks by railway companies.

It is conceded by counsel for appellants, that unless the act of April 13th, 1885, Acts 1885, p. 224, repealed prior laws, R. S. 1881, section 4025, *et seq.*, and thus changed the duties and liabilities of railway companies in relation to fencing their tracks "within such portions of cities and incorporated towns and villages as are laid out and platted into lots and blocks," and through uninclosed and unimproved lands, the railroad companies are liable in this case. The case, therefore, turns upon the question as to whether or not the act of 1885 wrought such changes.

The first section of the act provides that any railroad corporation, lessee, assignee, receiver, or other person or corporation, running, controlling or operating, or that may hereafter construct, build, run, control or operate any railroad into or through this State, shall, within twelve months from the taking effect of the act, etc., build and thereafter maintain fences, etc., on both sides of such railroad throughout its entire length, except at the crossings of public roads and highways, and within such portions of cities and incorporated towns and villages as are laid out and platted into lots and blocks, and except where the road runs through unimproved and uninclosed lands.

It is further provided, that where such lands become improved and inclosed on three sides, the railroad company, etc., shall build and maintain a fence along its right of way. And still further, it provides that such company, etc., shall

construct and maintain barriers and cattle-guards at all public roads and highway crossings, and that, on failure to perform the requirements of the act, the railway corporation, or person operating the road, shall be liable for all damages which may be done by the agents, employees, engineers or cars of such corporation or person operating the road, to any cattle, horses, etc., thereon.

The second section provides that, if the railroad company, etc., shall fail to fence its track, as in the first section required, the owner of land abutting on the right of way of the railroad company may, after a prescribed notice to the railroad company, etc., construct the fences and cattle-guards and collect from the railroad company, or person operating the road, the reasonable value of such fences and cattle-guards.

The third section provides that if the railroad company, etc., shall fail to keep the fences and cattle-guards in repair, the owner of land abutting on the right of way, after a prescribed notice to the railroad company, etc., may repair the same and collect from the company, etc., the value of such repairs.

The fourth section is as follows: " Nothing in this act contained shall in any manner affect or change the liability of railroad corporations, or of the assignees, lessees, or receivers of such corporations, for stock killed or injured upon their railroads; but such liability shall exist and be governed by laws now in force the same as if this act had never been passed."

This section four, we have concluded, was intended to continue the prior statute in force (section 4025, *et seq.*, R. S. 1881), and was designed as a declaration of the legislative intention in that regard.

The important question then is, how far may it or does it do so ?

If, in any particular, it is impossible for both statutes to remain in force—if, in other words, to continue any portion

of the prior statute in force will destroy any portion of the act of 1885, it must be held that to that extent the prior statute is not in force, notwithstanding the declaration in section four that it shall remain in force. *Deisner* v. *Simpson*, 72 Ind. 435.

On the other hand, repeals of statutes by implication are not favorites of the law, and will take place only to the extent that the new law is in irreconcilable conflict with the prior law.

It was held in the case of *Blain* v. *Bailey*, 25 Ind. 165, that "It is a maxim in the construction of statutes, that the law does not favor a repeal by implication, and it has accordingly been held that where two acts are seemingly repugnant, they must, if possible, be so construed that the later may not operate as a repeal of the former." And it was said that, in pursuance of that maxim, it has been held that an act is not repealed by implication when the Legislature had no intention to repeal it, citing *Tyson* v. *Postlethwaite*, 13 Ill. 727.

In the case of *Coghill* v. *State*, 37 Ind. 111, this court quoted with approval the following from Mr. Sedgwick's work on Statutory and Constitutional Law: "So in this country, on the same principle, it has been said that laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject; and it is, therefore, but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together." See, also, *City of Evansville* v. *Summers*, 108 Ind. 189, and cases there cited. And so, as said in the case of *Yost* v. *Conroy*, 92 Ind. 464, 472, it is competent for the Legislature to declare that former acts shall not be deemed repealed, and when this declaration is made courts will carry

The Jeffersonville, Madison and Indianapolis Railroad Co. *et al. v.* Dunlap.

it into effect wherever it can possibly be done without disregarding the provisions of the later act.

The Legislature has in several instances passed laws upon particular subjects, and at the same time declared by the same enactment that prior laws upon the same subject should not be repealed, but continued in force. In each instance this court has so far upheld the legislation as to hold both acts to be in force, where to continue the former act in force would not destroy the later; and has also held the former act to be in force so far as the continuing of it in force would not destroy the whole or any portion of the later act. Such acts have been passed and upheld in relation to drains and gravel roads. *Yost* v. *Conroy, supra; Robinson* v. *Rippey,* 111 Ind. 112, and cases there cited; *Deisner* v. *Simpson, supra.*

It has been said that repeals by implication rest upon the principle that the enactment of a new law covering the whole subject-matter of a prior law is an expression of an intention on the part of the Legislature to repeal the prior law, but that it can not be said that the passage of such subsequent law is the expression of such intention where it is positively declared that the later act shall not repeal the prior act upon the same subject. *Robinson* v. *Rippey, supra.* And hence, as we have stated, it is the duty of the courts to uphold both statutes if possible, and thus give effect to the expressed intention of the Legislature. May that be done here to any extent, and if so, how far?

The title of the act of 1863 (Acts 1863, p. 25; R. S. 1881, section 4025, *et seq.*) is an act to provide compensation to the owners of animals killed or injured by the cars, locomotives, or other carriages of any railroad company, and to enforce the collection of judgments rendered on account of the same. The act provides in detail for the commencement and prosecution of cases against railway companies for the injury and killing of animals, and prescribes a special and somewhat

summary method of collecting judgments obtained in such actions.

Section one as amended in 1877, R. S. 1881, section 4025, provides that the company, lessee, assignee, receiver, or other person or corporation running, controlling or operating the railroad, shall be liable jointly and severally, etc.

Another section provides that the act shall not apply to any railroad securely fenced in and such fence properly maintained by such company, etc.

As said in the recent case of *Pennsylvania Co.* v. *Spaulding, ante,* p. 47, that act did not, and, if still in force, does not, positively enjoin upon railway companies the duty of fencing their tracks, but made them liable, and, if in force, still makes them liable, for the injury and killing of animals upon the railroad track, where the road is not, but might and ought to be, fenced.

Whatever duty, then, there was or is in that regard on the part of the railway company under that act resulted, and still results, from the liability imposed.

By judicial interpretation, and in meeting constitutional objections urged against the act, it has been declared that one purpose of the act was to protect the public travelling in cars over the railroad. *New Albany, etc., R. R. Co.* v. *Tilton,* 12 Ind. 3; *New Albany, etc., R. R. Co.* v. *Maiden,* 12 Ind. 10; *Indianapolis, etc., R. R. Co.* v. *Guard,* 24 Ind. 222 (87 Am. Dec. 327); *Baltimore, etc., R. W. Co.* v. *Johnson,* 59 Ind. 188; *Cincinnati, etc., R. R. Co.* v. *Hildreth,* 77 Ind. 504.

Under similar statutes in other States it has been declared that the penalty was designed as an inducement for railway companies to fence their tracks. The purpose of the act, as declared by the title, was to provide compensation to the owners of animals injured or killed by the cars, locomotives, etc., and to enforce the collection of judgments rendered on account of the same. The act, then, was not designed wholly to provide compensation to the owners of animals killed by

cars, etc., nor wholly for the protection of the travelling public. That it was not designed wholly for the latter purpose is settled by the title, and by our cases holding that the owner of animals for whose convenience farm crossings and gates are maintained can not recover, if by his neglect the gates are left open and his animals go through them to the track and are there injured or killed. *Hunt* v. *Lake Shore, etc., R. W. Co., ante,* p. 69, and cases there cited.

If the act was designed wholly for the protection of the public, the railway company would be liable, although animals might pass to the track through such farm gates. To repeat, then, the act of 1863 (section 4025, *et seq.,* R. S. 1881), was designed to protect the public travelling in cars over the railroad, and to provide compensation to the owners of animals injured or killed by cars, etc., upon railroads.

It seems clear that the act of April 13th, 1885, was not designed simply for those purposes. The leading purpose of that act, as manifested by the title and the whole act, was to enjoin a positive duty upon railway companies to fence their tracks at the places therein specified; in other words, to give to the owner of adjoining enclosed and improved lands the right to demand and have a fence built and maintained between his land and the railway.

Under the former act, as the duty on the part of the railway company to fence its track resulted simply from the liability imposed for the injury or killing of animals, the adjoining land-owner had no means of enforcing the performance of the duty except by suits for the injury or killing of his animals by cars, etc., upon the track. He might recover for such injury or killing, but he had no means of compelling the railway company to build fences, nor of compelling it to pay for fences built by him.

The railway company might, as has been the case, neglect and refuse to build fences, and take its chances as to the amount that might be recovered from it for the injury or killing of animals. And thus the farmer's field might re-

main uninclosed on the side adjoining the railway, leaving his growing crops liable to devastation by the animals of others at large, unless he built fences himself. His animals might constantly escape and stray away, and yet he could have no recompense for the annoyance and loss.

To enable him to have fences built, either by or at the expense of the railway company, between his enclosed and improved lands and the railway, and thus escape the annoyances and losses above suggested, the act of April 13th, 1885, was, in the main, passed. And because the act was intended, principally, for the benefit and protection of owners using and farming adjacent enclosed and improved lands, it does not require the railway company to build and maintain fences along uninclosed and unimproved lands and in platted portions of cities, towns and villages which are not supposed to be used for farming purposes.

If that act absolutely repealed the prior act, there is no law which directly or indirectly imposes upon railway companies the duty of fencing their tracks within any portions of cities, towns or villages which may be platted into lots, nor through uninclosed and unimproved lands. There must be a considerable portion of each of the railroads in the State which pass through uninclosed and unimproved lands. And as in many places animals are allowed to run at large by order of the county boards, the result will be that the idea of compensation for animals killed upon railroads, and the idea of protecting the public travelling on railway cars, by requiring railway companies to fence their tracks, have been largely abandoned by the Legislature. We do not think that such was the intention of the Legislature in the enactment of 1885. Nor do we think that there is anything in that act that requires a holding that the prior act, in all its parts, is repealed, or that it can not remain in force without destroying the later act.

In the State of Missouri there was an act very similar to the act of 1885. The act there required railway companies

to erect and maintain fences on the sides of their tracks where the same passed through, along or adjoining enclosed or cultivated fields, or uninclosed prairie lands, and provided that until such fences should be built and maintained by the railway companies they should be liable in double the amount for all damages which might be done by their agents, engines or cars to animals going upon the track at places where such fences were required. It also provided that, in case the railway company should fail to build the fences as required, the adjoining land-owner might build them and collect the expense of the building from the railway company. Wagner's Missouri Statutes, published in 1872, vol. 1, p. 310.

It will be observed that the act did not require fences through or along uninclosed lands, except prairie lands; so the Supreme Court of that State held.

There was another statute (same volume of statutes, page 520), which, like our act of 1863, did not positively impose upon railway companies the duty of fencing their tracks, but, like that act, imposed a liability for the injury or killing of animals going upon the track, and provided that the act should not apply to any railway enclosed by a lawful fence. Those acts were both held to be in force, the one not conflicting with the other.

In the case of *Tiarks* v. *St. Louis, etc., R. R. Co.*, 58 Mo. 45, it was said that the first act above made it obligatory upon all railroads in the State to erect and maintain fences on the sides of the road, where the same passed through, along, or adjoining enclosed or cultivated fields, or uninclosed prairie land; and that until such fences should be built the corporation was made liable in double the amount for all damages by its agents, engines or cars to all animals on the road. Of the act last above mentioned, it was said that it was designed to furnish an inducement for the roads to fence their tracks where it was not deemed absolutely necessary to compel them to do so; that by that act, if the road was not fenced, and

animals were killed at a place where the law did not require fences to be erected, the corporation was still liable.

The same ruling was made in the recent case of *Radcliffe* v. *St. Louis, etc., R. R. Co.*, 7 West. Rep. 305, and it was there held again, that the act was not restricted in its application to cases of injury occurring at points where the companies were required to fence by the first act, but was general, giving the right to sue for an injury occurring anywhere on the road, except where it was enclosed by a lawful fence or crossed by public highways—in other words, that the act applied to any part of the road where the company had a *right* to maintain fences, although not required to do so by the other act.

Those cases are authority here. For the purposes of this case it would be sufficient to hold that so far as concerns portions of the railway, other than those portions required to be fenced by the act of April 13th, 1885, the prior act (section 4025, *et seq.*, R. S. 1881,) is still in force, and that in order to escape liability for the injury or killing of animals upon such portions, the railroad must be there fenced, as heretofore held by this court.

Appellants' counsel suggests this difficulty: Under the prior act there is no liability unless the animal is struck by the cars or engine. The act of 1885 provides that, on the failure to fence the railroad as therein required, the railway company, etc., "shall be liable for all damages which may be done by the agents, employees, engineers, or cars of such corporation * * * to any such cattle, * * * and other stock thereon."

It is argued that under the above act, and the language above quoted, there may be a liability although the animal may not be struck by the cars, or engine, but it is not suggested just how the damage to the animal may be done by the engineer, etc., except by running a train of cars upon it. The above quoted language of the act is confused and uncertain, but, after much thought upon the whole subject, we

think that it was not the intention that railway companies shall be liable for the injury or killing of animals, unless they are injured or killed by the cars or engines. We are led to this conclusion from two considerations. In the first place, the language is that the corporation shall be liable for the damage done by the engineers, etc., and cars " thereon." That seems to indicate that the animal must be injured on the track, and if so, it is reasonable to conclude that the intention was that the injury should be done by the engine or cars as formerly. In the second place, the main purpose of the act was not, as we have seen, to provide compensation to the owners of animals, but to secure fences to the land-owners. The probability is, that the portion of the act fixing liability for the injury or killing of animals was inserted as a matter of precaution, to avoid a possible doubt of the liability as it then existed. But if the suggestion of appellants' counsel as to the construction of that portion of the act should be adopted, it would not be a sufficient reason for holding that the prior act was totally repealed. To so hold would lead to much more serious difficulties.

The former act provides that the corporation owning the road, and the lessees, etc., shall be jointly and severally liable. If that act is repealed, there is no longer such joint liability.

The prior act provides where and how suits for the injury or death of animals may be brought, and prescribes a special, and, as we have said, a somewhat summary method of collecting judgments that may be obtained for the injury or killing of animals. If that act is repealed, there is nothing special left as to the place and manner of prosecuting such suits, and the owner of the animal must collect his judgment in the ordinary way.

If the former act is repealed, a considerable portion of each railroad in the State may be, and remain, without fences, and the two purposes which led to the legislation—compensation to the owners of animals injured or killed upon such

road, and the safety of the public travelling in cars thereon—will be largely thwarted.

Our conclusion upon the whole case is, that, notwithstanding the act of 1885, the corporation owning the railway, and the lessees, etc., are jointly liable for the injury or killing of animals, as formerly; that the manner of commencing and prosecuting actions for the injury or death of animals, and the manner of collecting judgments obtained, are the same as formerly; and that for a failure to fence, at all places required by the prior act, railway companies are liable for the injury and death of animals as formerly, except as to farm crossings and gates, the duty of keeping them closed having been expressly transferred, by the acts of 1885, from the railway company to the land-owner. In other words, while, under the old law, the duty to fence the railway results from the liability imposed, and under the new, the duty to fence the portions of the road therein specified is positively enjoined, yet, the liability for the injury and killing of animals being the same, there is no sufficient reason why the old law may not be held to be in force as to the whole line, except, as already stated, so far as concerns farm crossings and gates.

The court below having held that appellants are liable, and having rendered judgment accordingly, the judgment is affirmed, with costs.

Filed Oct. 15, 1887.