### PICKETT ET AL. *v.* TOLEDO, ST. LOUIS AND WESTERN RAILROAD COMPANY.

[No. 8,948.' Filed February 15, 1916.]

1. STATUTES.—*Construction.*—*Legislative Intent.*—The prime object in the construction of statutes is to ascertain and carry out the purpose and intent of the legislature, and while the words used in a statute should first be considered in their literal and ordinary signification, the letter of the statute should not be followed where it leads to contradiction, absurdities or unjust results, and the intention as gathered from a consideration of the whole statute should control. p. 29.

2. RAILROADS.—*Fencing Tracks.*—*Statutory Requirements.*—Under §5447 Burns 1914, Acts 1885 p. 224, requiring every railroad company to maintain fences on both sides of its railroad through the entire length thereof, where one railroad is paralleled by the adjacent track of another company, neither company is required to construct or maintain a fence between the two tracks, since a contrary construction of the statute would result in absurdity and the imposition of unnecessary burdens, in view of §5445 Burns 1914, Acts 1885 p. 148, requiring gates at farm crossings and would lend no assistance in carrying out the evident object of the statute. p. 29.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Lola Pickett and others against the Toledo, St. Louis and Western Railroad Company. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*St. John, Charles & Gemmill* and *Bell, Kirkpatrick & Voorhis,* for appellants.

*Charles G. Guenther, Braden Clark, Geddes Van*

*Brunt, Clarence Brown* and *Charles A. Schmettan,* for appellee.

IBACH, C. J.—The undisputed facts of this case show that on August 24, 1912, and for some years prior, the right of way of appellee through the farm of appellant Lola Pickett was adjacent to and parallel with the right of way of the Indiana Railway and Light Company. Appellee maintained a fence in good condition along the north side of its right of way, but neither company had built a fence between their rights of way. On the day above mentioned, and for years before, there had been a private way over such land and across both rights of way, and where the same passed through the fences, gates had been built and maintained as provided by law. It had been the custom of appellants to pasture their hogs in a field south of the south right of way, and on the day above mentioned some one had permitted the south gate to remain open, thereby permitting such hogs to pass·through and over and across the south right of way and on to appellee's right of way and tracks, where they were killed by one of appellee's trains. This action was instituted to recover the value of the stock killed.

There is no charge in the complaint that appellee's negligence consisted in the mismanagement of the train in any respect, or that the fences and gate through which the hogs entered on appellee's tracks were not in good condition or that the gate was opened through any fault of appellee, but the complaint proceeds wholly upon the theory that appellee was negligent in failing to construct and maintain a statutory fence along the south line of its right of way, which would be between its right of way and that of the traction company adjacent to and parallel therewith. There was a finding and

judgment for appellee. The sole question presented by this appeal is whether it was the duty of appellee to erect such a fence. The question is purely one of law under the undisputed facts and its solution depends upon the true construction of the existing statutes bearing upon that question.

Section 5447 Burns 1914, Acts 1885 p. 224, requires "That any railroad corporation * * * operating * * * any railroad into or through this state * * * shall erect, build, construct and thereafter maintain fences * * * on both sides of such railroad through the entire length, * * * sufficient and suitable to turn and prevent cattle * * * from getting on such road". In this section certain exceptions are provided for, none of which however apply to this case. Section 5445 Burns 1914, Acts 1885 p. 148, which with the foregoing section was enacted in 1885, provides that when such railroad is fenced on one or both sides at the point where any private wagon or driveway is established and maintained across the right of way of such railroad, the owner of the land for whose use and convenience any such private crossing is constructed and maintained, shall erect and maintain substantial gates in the line of such fence or fences across such way and shall keep the same securely locked when not in use by himself or employes.

The learned trial court in its discussion of these statutes uses this very apt language: "They were enacted almost thirty years ago and at a time when the paralleling of railroads through rural districts was a rare occurrence in the state, if at all. But in recent years many traction lines have been constructed throughout the state and invariably, as far as practicable, their rights of way have been secured and maintained along and adjoining the

rights of way of many of the steam roads of the state. This present condition did not exist at the date of the enactment of the above statutes, and could not then have been reasonably anticipated by or have entered in the minds of the legislators". These are some of the matters which we are required to consider in determining whether the court should apply §5447, *supra*, strictly according to its letter, or according to its true intent and object.

One of the approved rules for the interpretation of statutes has been many times announced by the courts of this State in the following or similar language. In the construction of statutes, the
1. prime object is to ascertain and carry out the purpose and intent of the legislature. To do this the words used in the statute should be first considered in their literal and ordinary signification, but the letter of the statute should not be followed where it leads to contradiction, absurdities or unjust results. We must look to the whole statute and the intent of the legislature as deduced therefrom must in the final analysis be the guide to its proper interpretation. *Storms* v. *Stevens* (1885), 104 Ind. 46, 3 N. E. 401.

We believe the construction of the statute insisted on by appellant does not express the evident intent of the legislature and the enforcement
2. of such construction would lead to absurd results. Consider, for example what the result would be if there were more than two parallel lines of road passing through appellant's farm; such a condition might exist as would lead to the construction of a large number of dividing fences and gates, and the maintenance of a large number of private crossings and gates which would be of no use or value to any one, but on the contrary would create a useless burden and expense to all owners of

such private crossings. Such results could not have been within the intent of the legislature. In discussing these fencing statutes by our own courts, and in many respects similar ones by the courts of other jurisdictions, it has been repeatedly announced that the object of such acts was to give the owners of animals compensation for stock killed or injured and as a police regulation to secure as far as possible safety of the public travel and transportation. Keeping these evident objects of the statute in mind, we are unable to see how the construction and maintenance of the additional fence insisted upon by appellant would in any manner assist in carrying out these purposes. In fact it could not serve any useful purpose, but on the contrary, would be an additional and unnecessary obstruction to the crossing, and consequently there could be no excuse for its presence. *Hunt* v. *Lake Shore, etc., R. Co.* (1887), 112 Ind. 69, 13 N. E. 263; *Jeffersonville, etc., R. Co.* v. *Dunlap* (1887), 112 Ind. 93, 13 N. E. 403.

On examination of these and many other cases we find that the courts in construing such statutes have refused to adhere to a literal interpretation of them and have departed more widely than we are required to do here to carry out the evident purpose of the legislature and avoid the doing of a useless and unnecessary thing. While the statutes do not in express terms relieve railway companies from fencing their rights of way where such fences are evidently unnecessary for any purpose, yet we believe that such exceptions are necessarily implied where their uselessness clearly appears and their presence would only create additional inconveniences and burdens. We conclude, therefore, that to adopt the more rational construction of these statutes rather than a strictly literal one insisted on by appellant would meet the evident purpose and intent

of the legislature and necessitate the holding that under the undisputed facts of this case it clearly appears the appellee and the traction company had so constructed their fences as to meet the intent and purposes of the fencing statutes, and, therefore, appellee was under no duty to fence the south side of its right of way between such right of way and the traction company's right of way at the place in question.     Judgment affirmed.

Note.—Reported in 111 N. E. 434.  As to rules for the construction of statutes, see 12 Am. St. 827.  See; also under (1) 36 Cyc 1106, 1128; (2) 33 Cyc 1198.