LYDIA Y. MERRILL, APPELLANT, *v.* JOHN D. SPENCER, RESPONDENT.

COUNTY SCHOOL TAX—VALIDITY AS TO CITIES OF FIRST AND SECOND CLASS—CONSTITUTIONAL LAW.

1. The proper construction of section 6, art. 10, of the constitution of the state of Utah, which provides that " in cities of the first and second class, the public school system shall be maintained and controlled by the board of education of such cities separate and apart from the counties in which said cities are located," is that in cities of the first and second class the public school system shall be maintained by the board of education of such cities. The board of education of such cities shall bear the expenses of, keep up, supply what is needed, maintain, and control the public school system therein; and such system of public schools shall be so maintained and controlled separate

14 UTAH—18

and apart from the counties in which said cities are located. The intention of the framers of this section was to locate and fix geographical divisions in counties containing cities of the first and second class, and make it the duty of the board of education of such cities to support, bear the necessary expense of, maintain, and control the public school system therein, separate and apart from the control of the counties in which such cities are located. The maintenance and control of public schools in said cities are made independent, separate, and apart from the counties in which they are located, and are to be controlled by the board of education of such cities separate and apart from the control of the county commissioners.

2. The collection of the county school tax within Salt Lake City, and the subtraction of about $30,000 from such fund so raised for various county school purposes, before the fund is distributed according to the number of children of school age, under the several acts of the state legislature, is an evasion and violation of section 6, art. 10, of the state constitution; and certain provisions added to section 88, art. 10, p. 489, Sess. Laws 1896, and section 115, art. 15, p. 497, Sess. Laws 1896, and other like provisions, are *held* invalid and repugnant to section 6, art. 10, of the constitution.

(No. 758.   Decided Dec. 12, 1896.)

Appeal from the Third district court, Salt Lake county. Hon. M. L. Ritchie, *Judge.*

Action by Lydia Y. Merrill against John D. Spencer, county collector, to restrain the collection of a tax levied under the provisions of section 91 of the revenue act, Laws of 1896, p. 451.   This section provides that the board of county commissioners each year "must levy taxes upon the taxable property of the county, not exceeding five mills on the dollar for county purposes, nor three mills on the dollar for district school purposes." From an order sustaining a demurrer to the complaint, and a judgment of dismissal, plaintiff appeals.   *Reversed.*

*Williams, Van Cott & Sutherland,* and *Bennett, Harkness, Howat & Bradley,* for appellant.

*C. O. Whittemore,* for respondent.

The plaintiff, in her complaint, alleges, in substance, that she is a resident of Salt Lake City, in Salt Lake county, and the owner of property in Salt Lake City; that a tax for county school purposes of two mills on the dollar has been levied in Salt Lake county in 1896; that said county school tax is levied for the support of the district schools within and without Salt Lake City, but all within Salt Lake county; that the total sum of said tax, if collected, would amount to $87,012.98, and the amount thereof that would be collected from Salt Lake City alone would amount to $71,956.26, and that of such school tax Salt Lake City would pay in excess of the amount distributed to it according to the number of school children the sum of $30,580; that there is a board of education duly organized and in control of the public school system within Salt Lake City, and such board has been, and now is, maintaining and controlling the public school system in Salt Lake City, and has levied a city tax for the year 1896 on all taxable property, for the support and maintenance of such city public schools; that such board pays its city superintendent of schools, members of its board of examiners, its treasurer, and all other incidental, proper, and necessary expenses from its own funds; that plaintiff is assessed for said county school purposes for the year 1896, on her land specified, the sum of $106.38, and has paid all the taxes assessed against her except the said sum assessed as county school taxes; that during the years 1893 to 1896, both years inclusive, and prior thereto, Salt Lake City paid into the territorial school fund a large amount annually in excess

of what it received from such school fund, when the same was distributed according to the number of school children; that Salt Lake City is a city of the first class; that said defendant will sell the property of plaintiff to collect said county school tax, unless restrained, and plaintiff's title thereto become thereby clouded,—and prays for an injunction, etc. To this complaint defendant filed a demurrer, alleging that the same does not state facts sufficient to constitute a cause of action, nor to entitle the plaintiff to the relief sought. The demurrer was sustained. Plaintiff elected to stand upon her complaint. Thereupon the court dismissed said plaintiff's complaint, with costs. From this judgment and order the plaintiff appeals, and alleges that the court erred in sustaining the demurrer, dismissing the complaint, and refusing to grant the injunction prayed for, and that there is no law authorizing the collection of any county school tax on property within Salt Lake City.

MINER, J., after stating the case, delivered the opinion of the court.

The only question presented by this appeal is whether there is any law in this State authorizing the levy and collection of any county school tax on property within said Salt Lake City. It is conceded that for many years before Utah became a state a school tax was levied within the territory, which constituted the territorial school fund. It was collected according to the value of the property, and distributed according to the number of school children of school age. According to the working of the system, Salt Lake City paid annually into the school fund a large sum in excess of what it received back. A county school tax was likewise levied in the county which includes Salt Lake City, in the same manner, and the fund was distributed the same. What was

true of Salt Lake City with reference to the territory, was also true with reference to the county. In this way Salt Lake City paid annually large amounts into both funds in excess of what it received back. Counties having no cities of the first and second class were not subject to this system of excessive or double taxation. Section 6 of article 10 of the constitution of Utah provides that "in cities of the first and second class, the public school system shall be maintained and controlled by the board of education of such cities, separate and apart from the counties in which said cities are located." The principal question in this case is as to the meaning of the word "maintained," as used in this section. Section 2996, Comp. Laws Utah 1888, provides that "words and phrases are construed according to the context, and the approved usage of the language. * * * " Webster, in subdivision 4, defines the word "maintain" to mean "to bear the expense of; to support; to keep up; to supply with what is needed." Section 26 of article 1 of the constitution says, "The provisions of this constitution are mandatory, and prohibitory, unless by express words they are declared to be otherwise." It is a familiar rule of construction that a word repeatedly used in a statute will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is another meaning intended. Article 10 of the constitution relates to education, and provides with reference to the different educational institutions of the State. In section 1 of article 10 of the constitution the legislature is required to provide for the establishment and maintenance of a uniform system of public schools. In section 2 of article 10 it is provided that high schools shall be maintained free in all cities of the first and second class. In the latter part of the same section the word "maintain" is used in connection with moneys appor-

tioned to support schools. In section 10 the word "maintenance" is used in connection with a fund to support the deaf and dumb asylum. The same word is used many times in this article as bearing upon and having reference to the support and maintenance of schools. In *Judson* v. *Blanchard*, 4 Conn. 566, the word "maintain" is held to mean "to bear the expense of." In *Rhodes* v. *Mummery*, 48 Ind. 217, the word "maintain" is defined as meaning "to bear the expense of." In *City of New Haven* v. *Whitney*, 36 Conn. 375, it is held that "a statute that prescribes that a thing shall be done in a particular way carries with it an implied prohibition against doing it any other way." "So when a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others."

Words in a constitution are not to be stretched beyond their fair sense, but within that range the rule of interpretation must be taken which will best follow out the apparent intention of its framers. "Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purposes of that provision, as strong as if a negative was expressed in every sentence." "In a statute that which is implied is as much a part of it as that which is expressed." *North Point Consol. Irr. Co.* v. *Utah & S. L. Canal Co.*, 14 Utah 155; Suth. St. Const. §§ 325-327; Cooley, Const. Lim. 78-105. Section 6 of article 10 has a plain meaning. It will be noticed that this section does not provide that the public school system within Salt Lake City shall be maintained separate and apart from the state, but simply separate and apart from the county. The plain meaning of the section is that in cities of the first and second class the public school system shall be maintained and controlled by the board of education of such cities. The board of education of such cities shall

bear the expenses of, keep up, supply what is needed, maintain, and control the public school system therein. And such system of public schools shall be so maintained and controlled separate and apart from the counties in which said cities are located. The intention of the framers of this section was to locate and fix geographical divisions in counties containing cities of the first and second class, and make it the duty of the board of education of such cities to support, bear the necessary expense of, maintain, and control the public school system therein separate and apart from the control of the counties in which such cities are located, and separate and apart from the control and supervision of the board of county commissioners of the respective counties where such cities of the first and second class are located. So far as the maintenance and control of the public schools in cities of the first and second class are concerned, they are made independent, separate, and apart from the counties in which such cities are located, and are to be controlled by the board of education of such cities, separate and apart from the control of the county commissioners. No other reasonable construction can be placed upon the language used in this section.

In framing section 6 of article 10 the constitutional convention must have found that in the previous workings of the several provisions of the statute there was a mischief existing which should be suppressed. The convention sought to suppress the mischief by framing this provision of the constitution providing that the school system shall be maintained and conducted in cities of the first and second class by the board of education of such cities, separate and apart from the counties in which the said cities are located. Section 94, p. 490, Sess. Laws 1896, provides, in substance, that the county com-

missioners of each county shall levy a tax not to exceed two mills on the dollar for county school purposes. Section 88, art. 10, p. 489, Sess. Laws 1896, provides as follows: The county superintendent of each county shall, immediately upon receiving the appointment from the state superintendent, proceed to apportion the state and county school funds to the several school districts of his county, according to the number of school children residing in each district, over six and under eighteen years of age, as appears from the last enumeration reported to his office; provided, that before making such apportionments he shall set aside so much of said fund as the board of county commissioners shall order for the payment of the compensation of the county superintendent, members of the board of examiners, the treasurer, the expenses of the county institute, and contingent expenses of the county superintendent's office." Section 115, art. 15, p. 497, Sess. Laws 1896, provides as follows: "All cities of the first and second class shall be governed by the provisions of this article. In cities of the first and second class, the public school system shall be maintained and controlled by the board of education of such cities, separate and apart from the counties in which said cities are located; provided, that this section shall not be construed as relating to the levying, collecting or apportioning of state or county school taxes." These statutes were passed just after the adoption of the constitution, and it is apparent that the legislature, while enacting section 6 of article 10 of the constitution into section 115, above quoted, at the same time added thereto a proviso, which, if effective, would avoid the plain meaning of the constitution, and give it an interpretation which its framers did not intend it to bear. At the same session section 88 was passed, with the proviso above quoted, by which it is

made the duty of the county superintendent, before making the apportionment to the several school districts of the county, to set aside from said school fund so much thereof as the board of county commissioners shall order for payment of the expenses of the county superintendent, members of the board of examiners, treasurer, expenses of the county institute, and contingent expenses of the county superintendent's office. All these expenses are defrayed by Salt Lake City out of its own fund, and yet, before it receives back its proportion of the school fund according to the number of children, the fund is depleted for the county expenses enumerated, and by this means Salt Lake City is required to pay about $30,000 annually into the school fund more than it receives back. The collection of the county school tax within Salt Lake City, and the subtraction from such fund so raised for various county school purposes before it is distributed according to the number of children of school age under the statutes referred to, is an evasion and violation of section 6 of article 10 of the constitution of the state; and the said provisos added to said sections 88 and 115, and other like provisions, are invalid, and repugnant to the constitution. The order and judgment of the court below is reversed, with instructions to grant an injunction perpetually restraining and prohibiting the defendant from collecting the county school tax referred to in the complaint within Salt Lake City.

ZANE, C. J., and BARTCH, J., concur.