THE STATE OF UTAH ex relatione HEBER M. WELLS, Plaintiff, v. CHARLES S. TINGEY, State Auditor, Defendant.

24  225
24  333

24  225
26  124

24  225
28  231

24  225
32  486

No. 1344.    (67 Pac. 33.)

1. **Constitutional Provision: Legislative Construction: Followed by Courts, When.**

Where the Legislature has construed a constitutional provision, such construction should be followed by the courts, if it can be done without doing violence to the fair meaning of the words used in order to support the constitutionality of the statute.

2. **State Officers: Salaries: Increase.**

Constitution, article 7, section 20, declares that the Governor and certain other officers shall receive for their services a compensation as fixed by law, which shall not be diminished or increased so as to affect the salary of any officer during his term, and that the compensation of the officers named, "until otherwise provided by law, is fixed as follows," etc. A statute was therefore passed during relator's incumbency as Governor, fixing the salaries of such officers, which raised the Governor's salary from $2,000, as fixed by the Constitution, to $4,000, and at the same session an appropriation was made for the salaries of such officers for the current and succeeding years at the sums fixed. *Held,* that the words "provided by law," as used in the Constitution, should be construed to mean "provided by statute," which excluded the Constitution itself, and hence the salaries named in the statute were the salaries "provided by law," and that such statute did not, therefore, constitute an increase of the salary "provided by law" during the Governor's incumbency, within the prohibition of the Constitution.

24 Utah—15

(Decided January 6, 1902.)

Original application in mandamus for a writ to compel the defendant, as State Auditor, to draw and deliver to the plaintiff a warrant for his salary as Governor.

PEREMPTORY WRIT ISSUED.

*Messrs. Richards & Varian* for plaintiff.

*Dennis C. Eichnor, Esq.,* for defendant.

BASKIN, J.—Upon the petition of Heber M. Wells, Governor of the State, an alternative writ of mandate was issued out of this court, directing the respondent, Charles S. Tingey, as State Auditor, to draw and deliver to the relator a warrant or warrants for the unpaid balance of his salary as Governor, alleged in the petition to be due and unpaid, and for which the respondent refused to issue to the relator a state warrant. The respondent demurred to the petition and alternative writ on the ground that they failed to state facts sufficient to constitute a cause of action or justify the issuance of a peremptory writ of mandate. It appears from the facts admitted by the demurrer: That the relator was, at the general election in November, 1900, duly elected Governor of the State, and that the term for which he was so elected began on the first Monday of January, 1901, and that upon that day he duly qualified, entered upon the duties of his office, and ever since has continued to discharge the duties of the same. That at the time he was so elected, and when he qualified and entered upon the duties of his office, the salary of the office of governor was as fixed by article 7, section 20, of the Constitution, which is as follows: "The Governor, Secretary of State, Auditor, Treasurer, Attorney-General, Superintendent of Public Instruction and such other State and dis-

trict officers as may be provided for by law, shall receive for their services quarterly, a compensation as fixed by law, which shall not be diminished or increased, so as to affect the salary of any officer during his term, or the term next ensuing after the adoption of this Constitution, unless a vacancy occur, in which case the successor of the former incumbent shall receive only such salary as may be provided by law at the time of his election or appointment.    The compensation of the officers provided for by this article, until otherwise provided by law, is fixed as follows:    Governor, two thousand dollars per annum," etc.    That the salary of the Governor, so fixed by said section of the Constitution, was not otherwise fixed by law during the term ensuing the adoption of the Constitution, but by an act of the Legislature approved by the Governor on March 14, 1901, and which went into effect on the thirteenth of the following May, the salary of the Governor was fixed at $4,000.    That act in form is as follows:

"An act fixing the salaries of certain state officers, and providing for payment thereof.

"*Be it enacted by the Legislature of the State of Utah:*

"Section 1.    Salaries of certain state officers fixed.    The annual salaries of the following state officers are hereby fixed as follows:    Governor, four thousand dollars; Secretary of State, three thousand dollars; State Treasurer, fifteen hundred dollars; State Auditor, two thousand dollars; Attorney-General, two thousand dollars; State Superintendent of Public Instruction, eighteen hundred dollars.

"Sec. 2.    To be paid quarterly.    The salaries of the state officers in section one specified, shall be paid quarterly, and the State Auditor shall draw his warrant on the State Treasurer at the end of each quarter for the amount of salary due each of such officers."    Laws 1901, p. 73.

By an act approved March 26, 1901, an appropriation of the sums necessary to pay the annual salaries fixed by the said Act of March 14 for the years 1901 and 1902 was made.

Neither the validity nor the constitutionality of the act increasing the salaries is questioned. It is conceded that the act properly applies to and fixes the salaries of future incumbents of the offices mentioned, but the parties disagree as to whether it can, under the provisions of section 20, article 7, be legitimately applied so as to fix the salaries of the incumbents whose election occurred and whose terms began before the act was passed. No other question is involved.

It is clear from the language of the act, and from the fact that during the same term at which it was enacted the Legislature appropriated money to meet the increased salary of the officers mentioned who had before the passage of said act been elected and were then serving the term for which they had been chosen, that the Legislature intended the act to apply to and increase the salary of the officers then serving their terms. This appropriation is, by implication, a legislative construction of the act and the section of the Constitution under consideration. This being so, under the well-settled rules of construction, the court must construe the act in accordance with the legislative intent, unless it is clear beyond reasonable doubt that the section of the Constitution quoted limits the act so as only to apply to and fix the salaries of the officers elected and installed after its enactment. In the case of Ogden v. Saunders, 12 Wheat. 213, 270, 6 L. Ed. 606, 625, Mr. Justice WASHINGTON, in his opinion, said: "I shall now conclude this opinion by repeating the acknowledgment which candor compelled me to make in its commencement, that the question which I have been examining is involved in difficulty and doubt. But, if I could rest my opinion in favor of the constitutionality of the law on which this question arises on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its

violation of the Constitution is proved beyond all reasonable doubt. This has always been the language of this court when that subject has called for its decision." In Supervisors v. Brown, 112 U. S. 268, 269, 5 Sup. Ct. 129, 28 L. E. 707, it is said in the opinion delivered by Mr. Justice HARLAN that: "It certainly can not be said that a different construction is required by the obvious import of the words of the statute. But if there were room for two constructions, both equally obvious and reasonable, the court must, in deference to the Legislature of the State, assume that it did not overlook the provisions of the Constitution, and designed the Act of 1871 to take effect. Our duty, therefore, is to adopt that construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the Constitution. . . . 'General words in the act should not be so construed as to give an effect to it beyond the legislative power, and thereby render the act unconstitutional. But, if possible, a construction should be given to it that will render it free from constitutional objection, and the presumption must be that the Legislature intended to grant such rights as were legitimately within its power.' " Again, Sykes v. Mayor, etc., 55 Miss. 115, 143: "It ought never to be assumed that the law-making department of the government intended to usurp or assume power prohibited to it, and such construction (if the words will admit of it) ought to be put on its legislation as will make it consistent with the supreme law." Cooley, Const. Lim., 218 et seq.; Black, Const. Law, sec. 28; Suth. St. Const., sec. 229. In Adams v. Howe, 14 Mass. 340, 345, 7 Am. Dec. 216, 218, it is said: "We must premise that so much respect is due to any legislative act, solemnly passed, and admitted into the statute book, that a court of law which may be called upon to decide its validity will presume it to be constitutional, unless the contrary clearly appears; so that, in any case of the kind substantially doubtful, the law would have its force. The Legislature is, in the first

instance, the judge of its own constitutional powers; and it is only when manifest assumption of authority or misapprehension of it shall appear that the judicial power will refuse to execute it." When the Legislature, by enactments, either impliedly or expressly construes a provision of a statute or a Constitution, in doubtful cases the courts will accept the legislative construction, and enforce the provision in accordance therewith, if the ambiguous language of the provision is such as admits of such construction. Counsel for the respondent admitted in his argument that the Legislature intended that the act should apply to the officers holding their term at the time it was passed, and that there is doubt whether, under the provisions of the Constitution, it did not so apply. If, in that respect, a reasonable doubt exists, then, under the established rules of construction, the intention of the Legislature should prevail.

The contention of the respondent is untenable unless the term "law," as used in the section of the Constitution referred to, clearly includes the Constitution itself. Although the term "law," in its broadest sense, includes constitutions, it is clear, from its connection in article 7, section 20, and other sections of the Constitution, that it was not used in its general sense, but merely as a designation of "statutory law." The term "law" occurs in the sections of article 7 preceding section 20 of said article, sixteen times, and in each instance the term is used in the sense of "statutory law." The term is also used in numerous other articles of the Constitution in the same sense. This is apparent from the connection in which that term is used in said sections. It is provided in section 1, article 7, that officers of the executive department "shall perform such duties as are prescribed by this Constitution and as may be prescribed by law." Section 13 provides that, "until otherwise provided by law," the officers named shall perform the duties therein prescribed. Sections 14 and 15 provide that, "until otherwise provided by law," the officers

therein mentioned shall perform the duties therein prescribed. By sections 16, 17, 18, and 19, the Secretary of State, Attorney-General, State Auditor, and Superintendent of Public Instruction are required to perform such duties as are therein expressly imposed upon each of them, and such other duties as may be prescribed by law. In these sections a distinction between statutory law and the Constitution is plainly- made. The terms "until otherwise provided by law," "as may be prescribed by law," and "as may be fixed by law," are frequently used both in the sections preceding and following section 20, and in all such instancs it is plain that the term "law" refers only to enactments of the Legislature. In the case of Merrill v. Spencer, 14 Utah 273, 277, 46 Pac. 1096, this court held that "a word repeatedly used in a statute will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is another meaning intended." The rule thus announced is also applicable in construing a Constitution. We therefore must hold that the term "law" was used in section 20 in the same sense as in the other sections of the Constitution, unless there is something which clearly shows that it was used in a different sense in said section. There is nothing in the Constitution which shows such different use. It follows that the provision of section 20 which prohibits the salary of any officer from being increased or diminished during the term for which he is elected applies only to such salaries as the Legislature shall by enactment fix, and that the salaries fixed in said section, like many other provisional matters in the Constitution, were intended to continue in force only until otherwise provided by the act of the Legislature. It is evident that a change of those provisions to which the term "until otherwise provided by law" is applied was left to the discretion of the Legislature, and that they may be changed whenever the Legislature chooses to exercise that discretion, except that, after the salary of any officer fixed by the Constitution is changed

by the Legislature, it can not thereafter again be changed so as to affect the salary of any officer during the term for which he was elected.

It is ordered that a peremptory writ as prayed for by the relator be issued, and that the respondent pay the costs.

BARTCH, J., and MORSE, District Judge, concur.