[Civil No. 1721.   Filed June 4, 1919.]

[181 Pac. 184.]

JESSE L. BOYCE, State Auditor of Arizona, Appellant, v. GEORGE W. P. HUNT, Appellee.

STATES—GOVERNOR'S SALARY—INCREASE DURING TERM—"UNTIL OTHER-
   WISE PROVIDED BY LAW."—Under Constitution, article 4, section 17,
   prohibiting change in public officer's compensation during his term
   of office, the Governor is not entitled to increase given him pending
   his term by Laws of 1917, chapter 61, notwithstanding article 5,
   section 13, of the Constitution naming Governor's salary "until other-
   wise provided by law," the salary having been "otherwise provided
   by law" by paragraph 3222, Civil Code Arizona, 1913, though same
   amount fixed by Constitution was named, the quoted words having
   reference to a new law on the subject and not to a change in the
   amount of salary.

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Reversed and remanded, with directions.

Mr. Wiley E. Jones, Attorney General, and Mr. W. E. Ryan, for Appellant.

Mr. L. B. Whitney and Mr. G. P. Bullard, for Appellee.

ROSS, J.—Appellee, as plaintiff, seeks by this suit to *mandamus* appellant as state auditor to settle and allow his claim for balance of salary as Governor of the state from March 14, 1917, to January 5, 1919. Appellant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. This demurrer was

overruled, and judgment ordered for appellee. The auditor has appealed from the judgment.

Chapter 44, Laws of 1913, third special session of the first legislature (paragraph 3222, Civil Code), fixed the salary of the Governor of the state at $4,000 per annum. That was the salary attached to the office when appellee was elected and inducted into office. In 1917, March 14th, and after appellee's term of office began, there was passed and approved, with the emergency clause, chapter 61, known as the Salary Act, in which the salary of the Governor was fixed at $6,500 per annum, an increase of $2,500 over the salary fixed by chapter 44, Laws of 1913, *supra*. It is the increase, to wit, $4,529.51, that appellee seeks to recover.

It is the contention of appellant that the appellee is not entitled to the increase because of the prohibition in section 17, article 4, of the Constitution. That section plainly, clearly and distinctly takes from the legislature the power to increase or diminish "the compensation of any public officer . . . during his term of office."

In a recent case (*Greenlee County* v. *Laine, ante,* p. 296, 180 Pac. 151) we held that this provision of the Constitution is all-inclusive, covering every public officer of the state, and making it impossible for the legislature to either increase or diminish the compensation of a public officer during his term. In the Laine case we were asked to ingraft upon section 17, article 4, an exception in favor of judges of the superior courts because section 24 of article 6 prohibits the reduction of a judge's salary, but says nothing as to the power or right to increase his salary. In view of the two provisions of the Constitution as to the salary of judges, the contention was plausible, if not tenable. There is no foundation for such contention in behalf of appellee.

However, it is contended by appellee that section 17, article 4, because of other expressions in that instrument, not considered in the Laine case, has no application to his claim for increase of salary. He premises his contention upon section 13, article 5, of the Constitution reading as follows:

"Until otherwise provided by law the salaries of the state officers shall be as follows: Governor $4,000.00 per annum. . . . "

The first Governor of the state was paid this constitutional salary until May 14, 1913, on which date chapter 44, *supra*

(paragraph 3222, Civil Code) went into effect. By this act it was provided:

"State officers shall receive the following salaries: The Governor $4,000 per annum. . . . "

Since the date of the approval of chapter 44, the Governor of the state had been paid the statutory salary therein provided. The constitutional and statutory salaries are identical in amount, and it is therefore contended that the salary of the Governor was not "otherwise provided by law" until changed in amount by chapter 61, *supra,* and for that reason appellee should receive the increase provided in the latter act. In other words, he would have us construe the expression "until otherwise provided by law" as referring to and modifying the amount of salary, and not the source of power to otherwise provide salaries. According to his theory, if the act of May 14, 1913, had changed the salary, increasing it from the constitutional sum of $4,000 to $6,500, or had decreased it from the constitutional salary to $2,000 per annum, then it would have been "otherwise provided by law," but since the first legislature did not change the amount of salary fixed by the Constitution, his salary is not "otherwise provided by law." We cannot concur in that contention. The act of May 14, 1913, was a law differing in character from the constitutional provision that first fixed the Governor's salary. After its passage and approval it was the only source of authority to which the Governor of the state could look for his compensation. It took the place of the constitutional provision on that subject just as effectually and completely as if it had provided a salary in a different amount to that fixed by the Constitution. By that act the salary of the Governor was "otherwise provided by law," in that it was provided for by "statutory law" and not constitutional law.

Appellee calls our attention to what was decided by the Utah supreme court in *State on Relation of Heber W. Wells* v. *Tingey,* 24 Utah, 225, 67 Pac. 33, as supporting his contention. Granting the Utah constitutional provisions are enough like ours on the question of the power or right to change the compensation of a public officer during his term of office—and we think they are—as to constitute some authority for our guidance in construing our Constitution on that subject, still the Tingey case arose out of a state of facts so

decidedly different from the facts we have here that the conclusions therein but remotely point in the direction of appellee's contention. The facts of the Tingey case are these: It was a mandamus proceeding brought by Heber W. Wells against Charles S. Tingey, State Auditor, and had for its object the compelling of the auditor to audit and allow a salary claim by Wells as Governor of Utah. At the time that Wells was elected and took office, his salary was fixed by the state Constitution in language, the material part of which is:

"The compensation of the officers provided for by this article, until otherwise provided by law, is fixed as follows: Governor, $2,000 per annum. . . . "

Gov. Wells was inducted into office on the first Monday of January, 1901. An act of the legislature effective May 13, 1901, fixed the Governor's salary at $4,000 per annum, and another act, passed at the same session, made appropriations to pay him the increased salary during the years 1901 and 1902. The Utah court held that Governor Wells was entitled to the increased salary because the constitutional salary was intended to be paid the officer only until the legislature in its discretion otherwise provided by law; that is, by "statutory law." It was there said that the word "law" in its broadest sense includes the Constitution, but where it occurs in the expression "until otherwise provided by law" it clearly has reference to "statutory law"; that the general prohibition in the Constitution against the increasing or diminishing of the salary of an officer during his term "applies only to such salaries as the legislature shall by enactment fix, and that the salaries fixed in said section [of the Constitution], like many other provisional matters in the Constitution, was intended to continue in force only until otherwise provided by the act of the legislature."

When the legislature acted, the legislative or statutory salary was substituted for the constitutional salary. It was then fixed or otherwise provided by law. In the Utah case the salary was "changed." Here it was not changed, although it might have been if the legislature had seen fit to do so. It could have made it less or greater than the constitutional salary, and, under the Tingey decision, it could not "thereafter again be changed so as to affect the salary of any officer during the term for which he was elected." We think the

controlling or dominant reason for the holding in the Tingey case that the salary provided by the act of May 13, 1901, was a legal salary was not because of a change of salary in amount, but because it was fixed by legislative enactment, as it was intended it should be. Any expression of the Utah court, apparently, placing emphasis upon the "change" of salary, was called forth not because the court intended that as the basis of its decision, but because it was one of the facts of the case. The Tingey case does not involve the power of the legislature to change the statutory salary or the salary fixed by the legislature. It was limited to the power of that body to change the provisional salary fixed by the Constitution.

We conclude that our act of May 14, 1913 (paragraph 3222, Civil Code), otherwise than in the Constitution, provided the salary for the Governor of Arizona, and that thereafter the legislature was powerless to change it so as to affect his compensation during his term of office. Chapter 61 of the Laws of 1917 was a legislative effort to increase the statutory salary fixed by chapter 44 from $4,000 to $6,500, and is a direct violation of the prohibition contained in section 17, article 4, of the Constitution.

The judgment is reversed and the cause remanded, with directions that the demurrer to the complaint be sustained, and that judgment be entered dismissing the complaint.

CUNNINGHAM, C. J., and BAKER, J., concur.