## KING, RESPONDENT, *v.* PONY GOLD MINING CO. ET AL., DEFENDANTS, ELLING ET AL., APPELLANTS.

[No. 1514.]

*On Motion to Dismiss Appeals.*

[Submitted October 4, 1900. Decided November 19, 1900.]

*Appeals—Second Motion to Dismiss—Constitutional Law— Special Legislation — Amending Statutes — Surety Companies — Powers — Undertaking on Appeal — Sureties — Justification.*

1. Though a second motion to dismiss an appeal on grounds existing at the time of the first motion should ordinarily not be heard, it will be where the first motion was denied, with leave to move anew, on grounds not stated in the first motion, without restriction as to presentation of matters occurring after the filing of the first motion.
2. Act March 9, 1893, which by Sections 1, 2 (Code of Civil Procedure, Sections 1900, 1901), authorizes any corporation incorporated in the state for guarantying or becoming a surety on bonds to become a sole surety, without an affidavit showing qualifications, is not a special law regulating the practice in courts of justice, in violation of Const. Art. V, Sec. 26, or a special law granting to a corporation a special or exclusive privilege, though it is not enjoyed by other corporations, and individual sureties must be at least two in number, and must accompany the bond with an affidavit of qualifications.
3. Const. Art. V, Sec. 25, providing that no law shall be revised or amended, or the provisions thereof extended, "by reference to its title only, but so much thereof as is revised, amended or extended shall be reenacted and published at length," has no application to an act which does not purport to be an amendment to or a revision of a prior act, but is an additional and independent piece of legislation, impliedly amending, and hence repealing, so much of the prior act as is in conflict with it.
4. An "undertaking" on appeal is within Civil Code 1895, Sec. 604, subd. 3, authorizing the creation of corporations to execute or guaranty any "bond" required by law to be given in any proceeding in court.
5. Under the statutes of Montana an "undertaking" on appeal is technically a "bond" within the common law definition, save that it need not be under seal.
6. The fact that a surety company is insolvent does not deprive it of its power to execute an undertaking on appeal, so as to render the appeal ineffectual, in the absence of the action for making up deficiency in its assets, required by Code Civil Procedure, Sec. 1900, to be taken by the state auditor when its liabilities exceed its assets, pending payment of which deficiency said section provides said company shall not be accepted on a bond.
7. The failure of a surety to an undertaking on appeal to justify upon exceptions to his sufficiency, or even his insolvency, of itself, furnishes no ground for the dismissal of the appeal.
8. An approval by a justice of the Supreme Court of an undertaking on appeal, in accordance with section 1740 of the Code of Civil Procedure, is a determination that the surety is financially good and sufficient.

ACTION by Rockwell King against the Pony Gold-Mining Company and others.  Judgment for plaintiff.  Defendants Henry Elling and another appeal.  Plaintiff moves to dismiss appeals.  Denied.

*Mr. Robert B. Smith, Mr. W. A. Clark,* and *Messrs. Cullen, Day, & Cullen,* for Appellants.

*Mr. T. J. Walsh,* and *Mr. F. P. Sterling,* for Respondent.

**MR. JUSTICE PIGOTT** delivered the opinion of the court.

1.  Elling and Morris, who were impleaded as co-defendants with the Pony Gold-Mining Company and Hauser, have appealed from a judgment against them and an order denying their motion for a new trial.  In July last the respondent moved that the appeals be dismissed.  Upon the denial of the motion, leave was granted to renew it upon grounds other than those contained in the first motion, and thereupon the respondent filed the motion now before the court.  The grounds of the present motion existed and were known to the respondent when he filed the original motion to dismiss, and no reason is suggested why the matters now urged were omitted from the former motion.  The general rule is that successive motions will not lie to dismiss an appeal where the grounds of the second motion existed at the time the first motion was interposed.  It is not pretended that this Court is without power to entertain appeals in the class of cases to which the one at bar belongs; it is not said that this Court is without appellate jurisdiction of the subject-matter of actions of the class within which the one at bar falls; the sole contention is that this court is without jurisdiction of the appeals for the reason that the undertaking on appeal is void.

By failing to incorporate into the first motion to dismiss an appeal all the grounds which then existed, the respondent must, ordinarily, be deemed to have waived the grounds not therein specified.  In the present instance, however, the Court granted to the respondent leave to move anew for the

dismissal of the appeals upon grounds not stated in the former motion, and the motion now made sets out only additional grounds assailing the undertaking as void.    Such a practice, is, as was held in *Succession of Edwards,* 34 La. Ann. 216, and *Stevens* v. *Higginbotham,* 6 Utah, 341, 23 Pac. 757, irregular, may lead to interminable delay, and should not be permitted.    In granting leave to the respondent to renew his motion without restricting him to the presentation of matters occurring since the filing of the first motion, the court acted without due consideration, and it may perhaps be said that the order was improvidently made; but, since leave was granted, and the new motion filed in pursuance thereof, we feel indisposed to strike it from the files.    We proceed, therefore, to consider the several grounds of the new motion.

2.    To effectuate the appeals, an undertaking in the sum of $300 was filed.    The Union Bank & Trust Company was the sole surety, and the undertaking is not accompanied by any affidavit of financial responsibility.    The Union Bank & Trust Company was and is a domestic corporation organized and doing business under and by virtue of the provisions of Chapter I, entitled "Trust Deposit and Security Corporations," of Title III of Part IV of Division I of the Civil Code of 1895, being sections 590 to 611 of that Code.    Subdivision 3 of Section 604 provides, among other things, that corporations may be created under Chapter I for the purpose of executing or guarantying "any bond or bonds required by law to be given in any proceedings in law or equity in any of the courts of this state or other state, or of the United States," and Subdivision 10 provides that such corporations may be created for the purpose of becoming "indorser and surety   *   *   *   for a compensation upon such terms and conditions as shall be agreed upon by the trustees of such corporation."    The amount of the capital stock actually subscribed by such a corporation shall not be less than $100,000.    (Section 605.)    If its directors shall knowingly declare and pay dividends when the corporation is insolvent, or pay any dividends which would render it insolvent, "they shall be jointly and severally liable

for all debts of the corporation then existing and for all that shall thereafter be contracted while they shall respectively continue in office." (Section 606.) Correct accounts of the transactions of the corporation shall be kept by the directors, and they must have full statements of the condition of affairs made out and exhibited to the stockholders as often as once in each year, at least 10 days before the day of election. The books and all records of the proceedings of the corporation shall at all times during their hours of business be open for inspection and examination to all stockholders, and to the auditor of the state, or to such person or persons as the legislative assembly or the state auditor shall designate or appoint for that purpose. (Section 607.) Section 607 further provides that every such corporation shall make a report of its condition to the state auditor on the first Monday of each January, April, July, and October, and at such other times as the auditor may call for it, under the oath of its president or treasurer, attested by a majority of the directors, showing in detail its liabilities and assets, and specifying its investments under heads of loans on mortgages, loans on collateral security, bonds and stocks, deposits in bank, and cash on hand; and that any officer or clerk of the corporation willfully making a wrong or false affidavit relative to the financial condition of the corporation shall be deemed guilty of perjury, and, upon conviction thereof, shall be punished accordingly. The sections referred to are parts of an act of the Third Legislative Assembly approved on the 8th day of March, 1893. (Laws of 1893, p. 105.) The articles of agreement and association set out the purposes for which the company was formed, among which are those herinbefore mentioned.

By section 1725 of the Code of Civil Procedure it is provided that an undertaking to secure an appeal must be in a sum not less than $300, and must be executed by at least two sureties, and by Sections 1731 and 1899 of the same Code the clerk with whom the undertaking is filed must require the sureties to accompany it with an affidavit that they are residents and householders or freeholders within the state, and

are each worth the sum specified in the undertaking over and above all their just debts and liabilities, exclusive of property exempt from execution. Sections 1900 and 1901 of the Code of Civil Procedure, being Sections 1 and 2 of "An act relative to sureties on undertakings and bonds," approved March 9, 1893 (Laws of 1893, p. 70), are as follows:

"Sec. 1900. In all cases where an undertaking or bond with any number of sureties is authorized or required by any provision of· the Code, or any law of this state, any corporation with a paid up capital of not less than one hundred thousand dollars, incorporated under the laws of this state for the purpose of making, guarantying or becoming a surety upon bonds or undertakings required or authorized by law, may become and shall be accepted as security or as sole and sufficient security upon such undertaking or bond, and such corporate surety shall be subject to all liabilities and entitled to all the rights of natural persons as such sureties; provided: that whenever the liabilities of any such corporation shall exceed its assets the state auditor shall require the deficiency to be paid up in sixty days, and if it is not so paid up then he shall issue a certificate, showing the extent of such deficiency, and he shall publish the same once a week for three weeks in a daily paper published in the town or city wherein the principal office of such corporation is, and until such deficiency is paid up such company shall not be accepted on any bond; in estimating the condition of any such company, the state auditor shall allow as assets only such as are allowed under existing laws at the time, and shall charge as liabilities in addition to eighty per cent of the capital stock all outstanding indebtedness of the company, and the premium reserved equal to fifty per centum of the premiums charged by said company on all risks then in force.

"Sec. 1901. In all cases where an undertaking or bond is authorized or required by any law of this state, the officer taking the same must, except in the case of such corporation as is mentioned in the next preceding section, require the sureties to accompany it with an affidavit that they are each re-

sponsible and householders or freeholders within the state and are each worth the sum specified in the undertaking or bond over and above all their just debts and liabilities, exclusive of property exempt from execution. But when the amount specified in the undertaking or bond exceeds three thousand dollars, and there are more than two sureties thereon, they may state in their affidavits that they are severally worth amounts less than the amount specified in the undertaking or bond, if the whole amount be equivalent to that of two sufficient sureties. Any corporation such as is mentioned in the next preceding section may become one of such sureties. No such corporation shall be accepted in any case as a surety whenever its liability exceeds its assets, as ascertained in the manner provided in the preceding section.''

The first ground of the motion is that Sections 1 and 2 of the Act of March 9, 1893, being Sections 1900 and 1901, quoted, are repugnant to the part of Section 26 of Article V of the Constitution of Montana, which ordains that ''the legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say:    *    *    * Regulating the practice in courts of justice.'' Although counsel for the respondent, in his reply brief, asserts that he does not urge the invalidity of the act upon the ground that it is a special law granting to a corporation a special or exclusive privilege in contravention of the constitutional prohibition contained in Section 26 against such a law, yet much of his argument has been devoted to the maintenance of the position that the act in question is unconstitutional, because it confers such special privilege upon certain corporations, to the exclusion of a similar privilege to other corporations and persons; and it may be observed that this seems to be the most important objection made to the validity of the act,—in short, the position which he assumes in the argument is that the act is void because it is a special law regulating the practice in courts of justice, and because it is a special law granting to corporations falling within the class to which the Union Bank & Trust Company belongs special and exclusive privileges.

The Act of March 9, 1893, is obnoxious to neither of the objections urged against its constitutionality. It is a general law regulating, among other things, certain matters of practice in all courts in the state; its provisions are applicable to, and may be taken advantage of by, all persons who give bonds or undertakings, or in whose behalf bonds or undertakings are given in actions or legal proceedings, or wherever a bond or undertaking with sureties is authorized or required by any law of the state. Every corporation of the class mentioned in the act possesses the same privilege or right to become the sole surety, and this without the affidavit required of natural persons. True, it operates upon a class of corporations, and not generally upon all corporations and persons, but a substantial reason exists for the discrimination. As to the discrimination between corporations organized for the purpose of becoming sureties and other corporations, it is obvious that all corporations may not be granted the same privileges and powers, because of the diverse purposes for which they are created. The fact that one corporation is clothed with the power of exercising certain privileges while the same power is not granted to others furnishes no ground for objection that the law is violative of the Constitution in that it is a special statute granting a special privilege. With respect to the discrimination between a class of corporations and natural persons, the objection to the act, as was said in *In re. Clark's Estate* (Pa. Sup., not yet officially reported), 46 Atl. 127, overlooks the fundamental distinction between corporations and natural persons. "All corporate franchises are special and exclusive privileges or immunities, discriminative against individuals. The act of incorporation itself is a discrimination as to privileges, powers and liabilities against the natural person. * * * The objection is chiefly based on the assumption that the suretyship of a corporation and that of an individual are identical, and that the act, therefore, makes a discrimination between equally qualified sureties for the same service." This is the precise contention here urged. "But this assumption is not sustained by the facts, and overlooks the material distinctions between

the qualities of the security afforded.    These distinctions are obvious.''    The Supreme Court of Pennsylvania then points out that the individual surety, however honest and well qualified at the time he became surety, is liable to the contingencies of business, the change of value in property, and the inexorable chance of death, which brings his estate into the administration of the law under wholly changed circumstances, and says that:    ''On the happening of any of these contingencies, the only person in position to keep close watch is the principal, and his interest is adverse to making known any doubt as to the sufficiency of his friend, or to assuming the burden of finding a new surety;    *    *    *    while the surety company must have a capital, the amount, nature of investment and management of which are known and within constant sight of the court and the parties interested.''    Similar reasons justified the legislative assembly in discriminating by the Act of March 9, 1893, between the corporations therein referred to and individual persons, permitting the corporations to become sole sureties without affidavit of qualification, while individual sureties must be at least two in number, and are required to accompany the bond or undertaking with an affidavit showing their qualifications.    These corporations are at all times subject to the visitorial powers of the state auditor and the legislative assembly, and must make regular reports showing in detail their liabilities, their assets and their investments.    Severe penalties are denounced against the officers and clerks who shall willfully make false oaths touching the financial condition of their corporations.    These and other reasons which are apparent suffice to show the constitutional basis for the legislative discretion.    The act is neither a special law regulating the practice in courts of justice (*Cramer* v. *Tittle*, 72 Cal. 12, 12 Pac. 869), nor a special law granting to a corporation a special or exclusive privilege (*In re Clark's Estate, supra*).

Some argument has been expended upon the latter part of Section 1900, providing that the state auditor, in estimating the condition of a surety company, shall include in the liabili-

ties "the premium reserved equal to fifty per centum of the premiums charged by said company on all risks then in force." This provision seems to have been taken from the statutes of New York (*Earle* v. *Earle*, 49 N. Y. Super. Ct. 57), whence California also adopted it. Inquiry into its meaning is not necessary upon the present motion; had the provision been wholly omitted, the act would nevertheless be valid as against the objections thus far urged.

3.   The next objection to the Act of March 9, 1893, is that it is an amendment of Section 540 of the First Division of the Compiled Statutes of 1887, and no intimation of such purpose is given in the title, nor is the section or its contents referred to in the body of the act, and that, therefore, it is violative of Section 25 of Article V of the Constitution of Montana, ordaining that no law shall be revised or amended, or the provisions thereof extended, "by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length." . At the time the act was passed Section 540 of the First Division of the Compiled Statutes of 1887 was in force. Its provisions were substantially carried into the Code of 1895, where they appear as Section 1899, cited *supra*. The act of 1893 was, by Section 5186 of the Political Code,—being an act approved March 13, 1895,—declared to be in force. It is unnecessary to inquire whether, under Sections 5181 to 5185, inclusive, of the Political Code, the Act of 1893 was re-enacted,—suffice it to say that the constitutional inhibition against revision or amendment of a law by reference to its title only has no application to amendments by implication. The Act of 1893 does not purport to be an amendment to or a revision of Section 540, *supra*; it is an additional and independent piece of legislation, which impliedly amended, and hence repealed, so much of Section 540 as is in conflict with it, leaving Section 540 otherwise operative. The object sought to be attained by the prohibition of the Constitution against amendments by reference to the title only of the act to be amended was to remedy a well-known evil. Many statutes were amended by merely striking

out or adding words or phrases, the amendatory statute giving no intimation of the language of the statute so amended.   To obviate the confusion and uncertainty consequent upon that mode of amendment, Section 25 of Article V of the Constitution requires that the statute as amended shall be re-enacted and published at length, neither the letter nor the spirit of which is applicable to the act of 1893.

4.   The respondent contends that neither the statutes nor the articles of association of the Union Bank & Trust Company authorize it to become a surety on an undertaking on appeal; and, if this contention be sustained, the appeals must be dismissed for want of jurisdiction.   It is conceded that a statute granting powers, privileges or franchises to a private corporation must, if ambiguous or uncertain in its terms, be construed as against the grantee and in favor of the general public; but, in our opinion, the grant to the Union Bank & Trust Company is not ambiguous nor uncertain with reference to the power to execute undertakings on appeal.   Section 1900, *supra*, provides that companies incorporated under the laws o Montana for the purpose of becoming sureties upon bonds or undertakings required or authorized by law may become and shall be accepted as security, or as sole and sufficient security, upon such undertakings or bonds, and shall thereupon be subject to all liabilities and entitled to all the rights of natural persons as such sureties.   By Subdivision 3 of Section 604 of Chapter I, *supra*, under which chapter the corporation was organized, power is given to execute any bond or bonds required by law to be given in any proceeding in law or equity in any of the courts of this state, or other state, or of the United States; and the articles of association declare this to be one of the purposes for which the company was organized. By Subdivision 10 the power to become surety for a compensation is granted, and the articles of association declare this also to be one of the purposes.   We deem it unnecessary to decide whether the Union Bank & Trust Company has authority, under the terms of Subdivision 10, to execute an undertaking on appeal, for we believe that power is granted by Subdivision 3.

There. is, it is true, a distinction in some respects between a statutory bond and a statutory undertaking, as was decided in *Pierse* v. *Miles*, 5 Mont. 549, 6 Pac. 347, and in *Ney* v. *Orr*, 2 Mont. 559, consisting chiefly in the requirement that the principal must be a party to the former, while the person in whose behalf the latter is executed need not be a party to it. An undertaking need not be signed by the person in whose behalf it is executed, or by the person for whose act or default the sureties promise to be answerable. There may possibly be some undertakings which the Union Bank & Trust Company has no power to execute under the grant contained in Subdivision 3 of Section 604, *supra,* but an undertaking to effectuate an appeal is not one of them. The undertaking was given in behalf of the appellants, upon whom the law imposes the obligation of doing that which the sureties promise in the undertaking that the appellants shall do; and they are liable for a breach of the obligation thus imposed by law to the same extent as if they had been named in and had executed the undertaking. An undertaking to secure an appeal to the supreme court is technically a bond within the common-law definition, save that it is not under seal; there is however, no difference in this state between sealed and unsealed private writings. It is not necessary at the common law that an instrument, to be a bond, must be executed by the person for whose default the obligors bind themselves to respond in damages, when he is not named as a party; nor is it essential that there be both principal and sureties. Under our statutes an undertaking on appeal is a species of bond, and the two words are by judges, text writers, lawyers, and laymen commonly used interchangeably. The legislative assembly, in providing that corporations of the class to which the Union Bank & Trust Company belongs may execute any bond or bonds required by law to be given in any proceedings in any court, intended not only to confer the power to execute bonds made by both principals and sureties, but also to clothe such corporations with power to execute that species of bonds which the statutes designate as "undertakings." No reason has been suggested, nor

do we think any reason exists, why the power should be given in the one case and withheld in the other, and certainly there is nothing in the statute indicating the design to withhold authority to execute undertakings which are included within the definition of the generic word "bonds." The statutory undertaking is, as we have said, a species of statutory bond,— an undertaking, but none the less a bond. The two terms are used in the statutes to describe succinctly and conveniently the different forms of the same instrument, "bond" to describe the one, and "undertaking" to describe the other kind of bond. In *Hurd* v. *Hannibal & St. Joseph Railroad Co.*, 67 How. Prac. 516, the guaranty of the Fidelity & Casualty Company of New York was accepted as bail upon an undertaking given on an appeal from the supreme court to the court of appeals. The guaranty was accepted under the authority of a statute providing that a judge might accept a bond or undertaking whenever its conditions were guarantied by a company duly authorized to do business in New York, and guaranty the fidelity of persons holding positions of public or private trust, and which vested such corporation with full power to guaranty such bonds or undertakings. The act was objected to because its title was not broad enough to justify its enactment, the title being "An act to facilitate the giving of bonds required by law." The contention was that the title of the act made no specific reference to undertakings. Summary disposition of the objection was made, the court saying: "But, as 'bonds' and 'undertakings' are to a very great extent understood to be convertible terms, the title of the act was not materially deficient." In employing the expression "bonds or undertakings" in Section 1900, *supra*, the probable intent was to remove any doubt that might possibly arise had the word "bonds" only been used.

Section 4660 of the Civil Code and Section 3462 of the Code of Civil Procedure, which provide that "words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate mean-

ing in law, ＊ ＊ ＊ are to be construed according to such peculiar and appropriate meaning,'' but declare the common-law canon of construction, and do not require that the species of bond called an undertaking must be held to be not a bond within the meaning of Subdivision 3, of Section 604, *supra*. ''Undertaking'' on appeal, as contradistinguished from ''bond'' on appeal, is not such a technical word, nor has it, as so dis-tinguished, such a peculiar and appropriate meaning in law as to demand a construction by which the use of the word ''bonds'' in Subdivision 3 excludes ''undertakings.''

5. The final attack upon the undertaking is that the lia-bilities of the Union Bank & Trust Company exceed the assets, by reason of which it had no power or right to become a surety. Such a condition is not shown by the evidence which we are asked to consider. Again: at the time the undertaking was given the Union Bank & Trust Company was a competent and qualified surety. In the absence of the action required by Section 1900, *supra*, to be taken by the state auditor when the liabilities of the corporation shall exceed its assets, the fact that it may have been insolvent could not deprive it of the power to execute the undertaking on appeal. The failure of a surety to justify upon exceptions to his sufficiency, or even his insolvency, of itself furnishes no ground for the dis-missal of the appeal. Section 1732 of the Code of Civil Pro-cedure provides, in effect, that, unless the sureties justify when excepted to, execution of the judgment or order appealed from is no longer stayed; but this provision does not render the appeal ineffectual because of the failure to justify, but only destroys the effect of the undertaking in so far as it may operate as a supersedas,—the appeal remains though execution is no longer stayed. The question whether the corporation may be required to justify when its sufficiency as surety upon an undertaking to stay execution pending appeal is challenged does not arise in this case, and is reserved.

Another answer to the last reason urged in support of the motion is that a new undertaking on appeal in the same form as the original, except an immaterial variation in verbiage,

executed by the same corporation as sole surety, has been approved by the Chief Justice of this Court and filed before the hearing of the motion to dismiss the appeal, all in accordance with the provisions of Section 1740 of the Code of Civil Procedure.    The approval by the justice was a determination that the surety is financially good and sufficient.    (*Stevenson* v. *Steinberg*, 32 Cal. 374.)

The motion is denied.                                              *Denied.*

Mr. Justice Word, being absent, takes no part in this decision. .