## MARIONEAUX v. CUTLER, Governor, et al.

No. 1718. Decided Aug. 1, 1907 (91 Pac. 355).

1. JUDGES — COMPENSATION — STATUTES — CONSTRUCTION — PROVISOS. Laws 1903, p. 71, c. 86, providing that the salaries of district judges should be fixed at $4,000 per annum, "provided" that no mileage or expenses should be allowed, was not subject to construction as though the proviso was omitted, because the contents thereof was not strictly a proper subject of a proviso; the intent of the Legislature to restrict the "salary" by cutting off mileages and expenses being apparent.

2. Statutes — Subjects — Salary of Judges. Constitution, art. 8, section 20, fixes the salary of judges until otherwise provided by law at $3,000 per annum and mileage. Laws 1896, p. 364, c. 124, allowed mileage to district judges, the act being entitled, "An act to provide for fixing the salaries and compensation of state and county officers," and Laws 1903, p. 71, c. 86, entitled, "An act fixing salaries of judges of the district court," provided that their salaries should be fixed at $4,000 per annum, provided that no mileage or expenses should be allowed. *Held*, that such act treated the mileage as a part of the salary, and was not therefore objectionable as containing a double subject.

3. Same — Title. Laws 1903, p. 71, c. 86, entitled, "An act fixing the salaries of district judges," and providing that no mileage or expenses should be allowed, was not objectionable for the reason that the subject of the act was not clearly expressed in the title.

4. Judges — Compensation — Mileage — Statutes — Repeal by Implication. Laws 1903, p. 71, c. 86, entitled, "An act fixing the salaries of district judges," and fixing such salary at $4,000, and expressly providing that no mileage or expenses should be allowed, though containing no express provisions for repeal, repealed by implication Revised Statutes 1898, section 2051, declaring that district judges should receive mileage at the rate of eight cents for each mile actually and necessarily traveled in the performance of their official duties.

Application of Thomas Marioneaux for a writ of mandate against John C. Cutler, Governor, and others, constituting the state board of examiners, to compel defendants to allow petitioner's claim as a district judge for mileage.

Writ denied.

*Thomas Marioneaux in pro. per.*

*M. A. Breeden* for respondents.

### APPELLANT'S POINTS.

The Constitution declares that the subject of contemplated legislation shall be clearly expressed in the title. No one is required to look beyond the title to ascertain whether a bill contains a subject not expressed in the title. For if it does contain a subject not expressed in the title, the law is well settled that as to such subject, the act will be declared null and void. (*Austin v. Potter County,* 7 Pa. Dist. 189; *In re*

*division of Sugarnotch Borough,* 7 Pa. Sup. C. 4; *Board of Supervisors v. City Council,* 28 S. E. 882; *Fat Joe v. Pfister,* 48 Pac. 1012; *Skenk v. State,* 37 Atl. 724; *Anderson v. Sullivan,* 75 N. W. 8; *Simard v. Sullivan,* 74 N. W. 280; *State v. Sullivan,* 76 N. W. 223; *State v. Stone,* 53 Pac. 479; *Mt. Joy v. Turnpike Co.,* 38 Atl. 411.)

### RESPONDENT'S POINTS.

"Was this affirmative interpretation of section 4 by the Legislature correct? If not, then its enactments resulting therefrom are void and must be declared so. Before this can be done, however, under a familiar principle of construction every doubt as to the validity of the enactment must be resolved in favor thereof." (*State v. City Council,* 23 Utah 18; *State ex rel. v. Tingey,* 24 Utah 225; *Young v. Salt Lake City,* 24 Utah 321; *Mayor v. Magruder,* 34 Md. 381; *Martensleben v. Haithcock,* 80 Ala. 565; *Bank v. Albany,* 31 Conn. 63; *State v. St. Louis,* 73 N. W. 623; *Bank v. Lawrence Mfg. Co.,* 96 N. C. 299.)

What is implied in a statute, pleading, contract, or will, is as much a part of it as what is expressed. (*Korring v. Hayard,* 2 Paine 251; *Haight v. Holley,* 3 Wend. 258; *Rogers v. Kneland,* 10 Wend. 218; *Dox v. Phelps,* 20 Wend. 447, Com. Dig. Title, devise, n. 12.)

Where there is a clear repugnance between two laws and the provisions of both cannot be carried into effect the later law must prevail and the former yield to the last expression of the legislative will. In such cases there is an implied repealer. (*Devine v. Commissioners,* 84 Ill. 590; *Repley v. People,* 123 Ill. 367; *Lyddy v. Long Island City,* 104 New York 218; *McCartin v. Traphagen,* 43 N. J. Eq. 323.)

FRICK, J.

This is an original application to this court for a writ of mandate. The applicant, hereinafter designated "petitioner," in substance alleges that from January, 1901, to January, 1905, he was the duly qualified and acting district judge of the Fifth judicial district of this state; that

between April 4, 1903, and November 18, 1904, he actually and necessarily traveled in the performance of his official duties a certain number of miles, setting forth the dates, distances, and amounts, aggregating the sum of $416.10; that on the 21st day of August, 1905, he duly presented to John C. Cutler, Governor, M. A. Breeden, Attorney General, and C. S. Tingey, Secretary of State, constituting the state board of examiners of the state of Utah, hereinafter called "respondents," said mileage account duly verified and itemized as provided by law, for allowance; that thereafter said respondents, acting as said board, refused to audit and allow said claim, upon the sole ground that respondents were advised and believed that there was no law of this state authorizing the allowance thereof, and therefore rejected the same. The petitioner further alleges that there are sufficient funds in the state treasury to pay said claim, and that the same is justly due and payable. Upon substantially the foregoing allegations the petitioner prayed that a writ of mandate issue requiring said respondents to allow said claim and to certify the same for payment, as required by law, or to show cause why they do not do so. Upon the application and prayer aforesaid, this court issued an alternative writ of mandate, to which respondents appeared by filing both an answer and a general demurrer.

The question to be determined arises upon the demurrer alone. There is no question raised respecting the sufficiency of the facts stated, if there be any law of this state which warrants the allowance of the claim presented to respondents. Is there such law? The answer to this question hinges upon the constitutional and statutory provisions of this state respecting the salary or compensation and mileage allowable to district judges during the period of time mentioned in the petition. To determine the question requires a review of the constitutional and statutory provisions upon the subject.

The initial step in this legislation is found in section 20 of article 8 of the Constitution of this state, which provides: "Until otherwise provided by law, the salaries of the Supreme and district judges, shall be three thousand dollars per

annum, and mileage, payable quarterly out of the state treasury." The Constitution became effective January 4, 1896, and the first Legislature under the Constitution, on April 5, 1896 (Laws 1896, p. 364, c. 124), passed an act fixing the salaries of certain state and county officers, and in that act also fixed the mileage to be allowed the district judges under the following title: "An act to provide for fixing the salaries and compensation of state and county officers." This act was evidently passed to fix the salaries of the officers which were not fixed in the Constitution, and to limit the amount of mileage to be allowed to the judges. The mileage was limited to eight cents a mile, and this was done because no amount or limit had been named in the Constitution. This act, in respect to the mileage of the district judges, was carried into the Revised Statutes of 1898, section 2051, which reads as follows: "District judges shall receive mileage at the rate of eight cents per mile for each mile actually and necessarily traveled in the performance of their official duties." In 1901 this section was amended (Laws 1901, p. 102, c. 103) by changing the mileage from eight to five cents a mile for travel on railroads, and 15 cents a mile when traveling by other conveyance. In 1903 (Laws 1903, p. 71, c. 86) an act was passed under the title and in terms as follows:

"An act fixing the salaries of judges of the district court.

"Be it enacted by the Legislature of the State of Utah:

"Section 1. Salaries of District Judges. That the salaries of the judges of the district court are hereby fixed at four thousand dollars per annum, payable quarterly out of the state treasury; provided, that no mileage or expenses shall be allowed."

At the same session (Laws 1903, p. 64, c. 74) the salaries of the judges of this court were also increased from the amount named in the Constitution by an act the terms and title of which were identical with the act last above set forth, with the sole exception that Supreme Court judges were named in the latter act, while district court judges were named in the former. It will be observed that no mention of

the act of 1901 is made in the act of 1903 quoted above except by reference to mileage in the proviso, where it is provided that "no mileage or expenses shall be allowed." The first contention of petitioner is that that part of the act of 1903 called a proviso is not such; that a proviso logically performs the office of either an exception to the thing granted, permitted, or prohibited, or is a condition engrafted thereon. It is further asserted that, since this so-called proviso is not such, it performs no office whatever in the act, and therefore should be entirely disregarded. It may be conceded that naturally and logically the purpose of a proviso is as claimed by the petitioner, but a departure from this rule, in a part of an act called a proviso, is not alone sufficient to require the so-called proviso to be disregarded. It is a well-established principle that a proviso, like all other parts of a statute, must be accorded the natural meaning and purpose intended, and this intention must be ascertained, first, from the whole act; and, second, if the act relates to a particular matter or thing, by a reference to such matter or thing, when necessary, to arrive at the true meaning of the act or proviso. In this connection it is also well to remember that matter set off from other parts of a section by the term "provided" does not always constitute what in legal phraseology is termed and understood as a proviso. This is well illustrated in *Georgia Banking Co. v. Smith,* 128 U. S., where, at page 181, 9 Sup. Ct. 49, 32 L. Ed. 377, Mr. Justice Field, in referring to the term "provided," says that it may have no greater signification than would be attached to the conjunction "but," or "and," and may serve only "to separate or distinguish the different paragraphs or sentences."

In *Bank v. Manufacturing Co.,* 96 N. C. 307, 3 S. E. 363, it is held that the rule that a proviso is a limitation upon or an exception to general words is not absolute, but the meaning of the proviso must be ascertained by the same rules as the meaning of other parts of the statute is ascertained. In the case of *Wartensleben v. Haithcock,* 80 Ala. 568, 1 South. 38, 40, Mr. Justice Clopton, speaking for the court, uses the following language:

"Generally the appropriate office of a proviso is to restrain or modify the enacting clause, or preceding. matter, and should be confined to what precedes, unless the intention that it shall apply to some other matter is apparent. When from the context, and a comparison of all the provisions relating to the same subject-matter, it is manifest that the object and intent were to give the proviso a scope extending beyond the section, and effect beyond the phrase immediately preceding, it will be construed as restraining or qualifying preceding sections relating to the subject-matter of the proviso, or as tantamount to an. enactment in a separate section, without regard to its position and connection."

For rules of construction of provisos, and the collection of cases upon the subject, see 6 Words & Phrases, p. 5755 et seq., under the title "Proviso."

Recurring now to the history of the legislation upon the subject in question, we find that the framers of the Constitution, in the section above quoted, treated salary and mileage as one subject. We further observe, by having recourse to section 12 of the same article of the Constitution above referred to, that the terms "salary" and "compensation" are treated as synonymous and used interchangeably. Section 20, above quoted, would thus be construed as if it read: "Until otherwise provided by law, the compensation   .   .   . shall be three thousand dollars per annum, and mileage, payable quarterly," etc. The annual compensation to be paid to judges was thus composed of two items, namely, $3,000, and mileage, payable quarterly. The same language as to salaries and compensation is found in the California Constitution, and it is held by the California Supreme Court that these terms mean the same thing. (*Kirkwood v. Soto*, 25 Pac. 488, 87 Cal. 394.) The Legislature, also, by the first act passed (Laws 1896, supra), treated the matter as one subject. In the title of that act, which we have quoted above, nothing is said about mileage, and yet mileage is fixed therein; and, so far as we are aware, no difficulty was encountered by the judges in obtaining mileage. It is only natural, therefore, that when the act of 1903, the act now under consideration, was passed, the Legislature should treat the matter of salary or compensation and mileage as one subject, precisely

as this had theretofore been done. In increasing the salary or compensation of the judges from $3,000 to $4,000, it was manifestly intended to include mileage in the higher sum provided for. As mileage had, however, been fixed at a specific amount, it was cut off by what is termed the proviso in that act. While the so-called proviso, as we have seen, is not logically such, it, for that reason alone, is not to be left out of consideration in enforcing that act. The meaning of the act is not at all obscure, and this is conceded on all hands. But it is contended by the petitioner that the act should be read as though it ended at the last word preceding the proviso. We cannot assent to this. We think the act should be read as a whole, including the so-called proviso. Thus read, it would mean that the salary or compensation of the judges is fixed at $4,000 per annum, including mileage. Or, to state it negatively, as it is stated in the proviso, it would in effect mean that the compensation or salaries of the district judges shall be $4,000 per annum, and no mileage or expenses shall be allowed hereafter. While this is a change in phraseology, it is not a change in the sense nor of the meaning of the act. It would in law simply amount to an "immaterial alteration." All that is added in the foregoing rendering is clearly implied, and what is omitted would not change the sense or meaning in the slightest degree.

Under the Constitution, mileage was not intended as a permanent allowance, any more than was the sum $3,000 as salary named therein. It was to continue only "until otherwise provided by law." The Legislature could thus cut off the allowance of mileage when it fixed the permanent salary or compensation of the judges, and that is just what was intended to be done by passing the act of 1903. This intention is manifest, and is conceded. It is urged, however, that if it be conceded that this was the intention of the Legislature, and the act be given the meaning we have given it above, still the matter contained in the so-called proviso is void for two reasons: (1) That the act would then consist of a double subject; or, (2) if this be found not to be so, that the subject of the act is not clearly expressed in the title, and that the first of the

foregoing propositions is prohibited, and the second required, by the Constitution of this state. In support of the first ground, it is argued that salary and mileage are two separate and distinct subjects, and hence cannot be joined in one act. We need not discuss at length the reasons why salary or compensation and mileage may be one subject within the purview of the Constitution. That, as abstract propositions, they may be two subjects, cannot well be questioned. It is equally apparent that, for legislative purposes, in fixing the compensation of officers, they may quite as naturally form but one subject. As we have already pointed out, both the framers of the Constitution and the Legislature combined them as one subject, and hence we have no right nor legal cause for separating them. It is urged, however, that, if we treat them so, then the effect of the act of 1903 is to amend the act of 1901 without setting it forth as amended, and without mentioning the former act in the title of the latter. In support of this contention *State v. Beddo*, 22 Utah 432, 63 Pac. 96, is cited. We have already had occasion to point out that the decision in the *Beddo Case*, if construed as broadly as contended for, is too sweeping. We therefore modified the *Beddo Case* in the later case of *Mill v. Brown* (Utah), 88 Pac. 609, where we think the true rule, as supported by the overwhelming weight of authority, is stated. The rule, as there stated, is that the constitutional provision forbidding the amendment of statutes without setting forth the section as amended does not apply to new and independent acts which affect existing laws by implication merely. (Cooley's Const. Lim. [7th Ed.], 216; 1 Lewis' Stat. Constr. [2d Ed.], 239, 240; *King v. Pony Gold Min. Co.*, 62 Pac. 783, 24 Mont. 470.)

It is argued, however, that, if the so-called proviso is given effect, then it repeals the act of 1901, *supra,* and that this could not be done in that form, and therefore the act of 1901 in respect to mileage is still in force. It must be conceded that the method adopted by the Legislature in passing the act of 1903 in effecting a repeal of the act of 1901 is not the most approved method of accomplishing that result. That, however, is not a matter to be determined here. If the Legis-

lature violated no express constitutional provision in accomplishing that result, then the later act is lawful, although better methods might have been employed. The question, therefore, is: Did the Legislature violate a constitutional provision in passing the act of 1903? As that act is directly opposed or repugnant to the act of 1901 in respect to the allowance of mileage, the former must give way to the latter upon that subject. In this connection, it is argued by the petitioner that, if it was intended to repeal the former act by the latter, in view of the dual nature of the subject, the purpose to repeal should have been expressed in the title of the act of 1903. It is not contended that in all cases the purpose to repeal need be stated in the title, but, as we understand petitioner, he contends that in this case, if it was intended to repeal the act of 1901, the intention should have been manifested in the title of the act of 1903, which became the repealing act. But we have to deal with the effect of the act of 1903, not merely with its form. The effect was clearly to repeal the act of 1901, and such was likewise the manifest intention of the Legislature. If, therefore, salary or compensation and mileage constituted one Legislative subject, then mileage was included within the general subject of the latter act, and would, by implication, repeal the former so far as they were in conflict. While repeals by implication are not favored, they must be given effect when the intention of the lawmaking power is clear. Two acts upon the same subject inconsistent with each other cannot stand, and the former must give way to the latter. (*Judge v. Spencer,* 15 Utah 242, 48 Pac. 1097; *Furniture Co. v. Furniture Co.,* 10 Utah 31, 36 Pac. 132; *In re Gannett,* 11 Utah 283, 39 Pac. 496; *Kepley v. People,* 123 Ill. 376, 377, 13 N. E. 512; *Devine v. Commissioners,* 84 Ill. 590; *Lyddy v. Long Island City,* 104 N. Y. 218, 10 N. E. 155; *Railroad Co. v. Dunlap,* 112 Ind. 93, 13 N. E. 403.)

This brings us to the last, and, as we conceive, the most serious, question in the case. Holding, as we do, in view of the past history of legislation, both constitutional and statutory, that the salary or compensation and mileage of the

judges constituted but one legislative subject, is that subject expressed in the title of the act of 1903 as required by the Constitution of this state? As may well be expected, upon a subject as intricate as the one under consideration the authorities are not in entire harmony. Some hold to a strict, others to a more liberal, view. It is conceded by all courts that the title may be so framed as to restrict the act itself to matters which, under a proper title, might legitimately have been included therein; that by a restricted title matters may be foreign which otherwise might be closely related to the subject-matter of the act. The authorities, however, make clear one point, and that is that a hard and fast rule governing all cases cannot be formulated. This in the nature of things must be so, since what may be treated as one single legislative subject by both the framers of the Constitution and Legislature of one state may be treated as two distinct and separate subjects in another state. By saying this we do not mean that the Legislature may arbitrarily make one subject out of that which naturally and logically constitutes two; but what we mean is that the Legislature may include a per diem, or other stipend, with mileage as a fixed compensation, and when these are combined as compensation, then this compensation constitutes the legislative subject, and not the stipend and mileage separately considered. This, we think, is a fair deduction from the authorities upon this subject.

After giving a large number of concrete instances, the author, in 1 Lewis' Sutherland's Statutory Construction, p. 209, says:

"These decisions have been referred to in detail because no general rule on the subject can safely be formulated. This will be manifest when the cases cited in this section are compared with those cited in the following section." Continuing the subject further, same volume, at pages 216 and 217, the same author says: "If the words of a title, taken in any sense or meaning which they will bear, are sufficient to cover the provisions of the act, the act will be sustained, though the meaning so given the words may not be the most obvious or common. The same rules of construction apply to titles or (as) to other parts of a statute, but it is to be remembered that these rules of construction are servants and not masters, and should not be applied to defeat the legislative intent."

In *Johnson v. Harrison*, 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 384, Mitchell, J., speaking for the Supreme Court of Minnesota, says:

"The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical. It is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation, and of the interests likely to be affected. The title was never intended to be an index to the law."

In the case of *Mills v. County Treasurer*, 29 Wis. 410, 9 Am. Rep. 575, the rule is also well stated in the following language:

"As already observed, the subjects of legislation are usually expressed with the utmost brevity and conciseness in these titles, and some consideration must be given to this circumstance in determining the question. The court is not to set aside or declare an act void because the subject was not as fully or as unequivocally expressed as it might otherwise have been. A liberal rule of interpretation must prevail in this respect, not only for the reason just stated, but because the proposition is to strike down and defeat the act of the Legislature, which can never be done on slight or untenable grounds. It is a truth which has been often asserted and often acted upon by the courts that to justify the annulling of a statute by judicial sentence the violation of the constitution must be clear and unmistakable."

The rule is also well stated in a case entitled *Matter of Application of New York City*, 99 N. Y. 577, 2 N. E. 642. The same thought is inferred, if not expressed, by this court, in the following cases: *Nystrom v. Clark*, 27 Utah 186, 75 Pac. 378; *State v. Lewis*, 26 Utah 120, 72 Pac. 388; *State v. Tingey*, 24 Utah 225, 67 Pac. 33. It is not contended that the Utah cases cited above are decisive of the precise point under consideration, but they do state the rule applicable in passing upon constitutional objections to legislative acts. The following cases are likewise instructive upon the point involved: *In re Pinkney*, 47 Kan. 89, 27 Pac. 179; *Gibbs v.*

*Northampton Township,* 52 N. J. Law 496, 19 Atl. 975;
*Winters v. City of Duluth,* 82 Min. 127, 84 N. W. 788.

By reference to 7 Words & Phrases, p. 6287 et seq., under
the title "Salary," it will be seen that the term "salary" may
be and is variously applied. It is usually used as designating
recompense, reward, or compensation for services rendered.
Mileage may become a part of compensation. If the mileage
allowance is limited to the amount actually expended in trav-
eling, then it cannot, of course, add anything to the income of
the recipient of the salary. But, if the mileage is not so limit-
ed, as where a certain amount is allowed for each mile traveled
and this amount exceeds the actual mileage charged, then the
balance above such charge becomes a part of the official in-
come or compensation the same as though it were a part of the
salary. As a concrete proposition, it is not controlling that
such accretions to official compensation are not designated as
salary. It is not unusual, as is generally known, to allow
large mileage to eke out the compensation of officers. It can
make no difference in principle, however, whether the mileage
allowance be much or little above the actual charge, so long
as it is not limited to the actual cost of mileage, but is fixed
by a round sum per mile. In such event the portion of unex-
pended mileage may be added to the compensation, and hence
may be intended as a part of the compensation. It is assert-
ed that to fix the salaries of district judges was the only mat-
ter referred to in the act of 1903; that mileage was not men-
tioned, and hence could not be affected by the act. In a broad
sense nothing was done by the act of 1903 except to fix the
salary or compensation of the judges. Up to the time of the
passage of that act the judges received $3,000 per annum
with a stated amount for each mile traveled (regardless of
the actual cost imposed in traveling) as compensation. In
the act of 1903 their compensation was fixed at $4,000 per
annum. Before the act was passed the compensation of the
judges may have been in excess of $3,000 per annum, depend-
ing entirely on whether there was any difference between the
mileage allowed to and the amount expended by them for
mileage. This mileage was thus not entirely foreign to the

subject of salary or compensation, and in one sense, in view of the previous legislation respecting the allowance and application of mileage, the act of 1903 did no more than fix the salary or compensation at a fixed amount to which nothing should be added.

The petitioner cites numerous authorities, many of which are clearly distinguishable from the case at bar, while others as clearly support his contentions, if we eliminate the history of prior legislation, and treat the act of 1903 as an entirely independent and abstract proposition. Space forbids us from reviewing and pointing out the reasons why we feel constrained to declare a result different from those reached in some of the cases cited by him. We desire, however, to notice one case cited and upon which petitioner seems strongly to rely, namely, the case of *Howard v. Schneider*, 62 Pac. 435, 10 Kan. App. 137, decided by the Kansas Court of Appeals. Petitioner, evidently by inadvertence, has overlooked the fact that that case was disapproved in a later case by the Supreme Court of Kansas, reported under the title of *Stewart v. Thomas*, 68 Pac. 70, 64 Kan. 511. The opinion in the later case clearly illustrates that the history of legislation, or the state of the law upon any subject may affect the meaning or scope that is to be given to titles as well as such matters may affect the acts themselves. The later case from Kansas will be found in entire harmony with the spirit we invoke in this case upon this subject. The case at bar is a border-line case upon this subject, and as such is not free from doubt. Much can be said in favor of petitioner's contentions, and, were the act in question an independent act, and freed from the complications arising out of the provisions of previous constitutional and statutory enactments, we might feel inclined to arrive at a different result.

In conclusion, in order to avoid a misconception of the scope of this decision, we remark that the Legislature may not disregard the constitutional provision requiring that no act shall contain "more than one subject, which shall be clearly expressed in its title," by simply making the legislative intention clear in the act itself. But when a reasonable doubt

exists, as in this case, upon the question whether the subject of the act is expressed in the title, then such doubt will be resolved in favor of the act. While the subject of the act of 1903 is not as clearly expressed as it might have been done, yet we think that the manifest intent of the Legislature as expressed in the act is sufficiently indicated in the title, and that the title is not misleading, and hence sufficient to bring it within the constitutional provision.

As the act is not assailed upon any other ground, we are constrained to hold that the act, by implication, repealed the act of 1901 allowing mileage, and hence the demurrer to the petition should be and accordingly is sustained. In view that the petition cannot be amended so as to allow the relief prayed for, it is ordered that the action be, and the same is hereby, dismissed, with costs.

McCARTY, C. J., and STRAUP, J., concur.