## VILLAGE OF FARMINGTON v. H. D. REISINGER AND OTHERS.[1]

March 2, 1928.

No. 26,580.

**When undertaking to secure deposit of public moneys will be enforced as a common law bond.**

    1. Where a statute requires a bond to secure a deposit of public moneys, and in an effort to comply with the statute an undertaking rather than a bond is given, the same will be enforced as a common law bond.

**Mere renewal certificates of deposit of public moneys do not constitute payment.**

    2. Where a certificate of deposit is taken for village moneys deposited with a bank and such certificate is renewed from time to time, the renewal certificates, nothing else appearing, are not payment of the original deposit.

**Sureties for continuing deposit of public moneys are not released by renewals without their consent.**

    3. And where it is contemplated that the deposit shall be a continuing one, no date being fixed for its payment, the sureties are not released by renewals made without their consent.

Bonds, 9 C. J. p. 27 n. 81.
Depositaries, 18 C. J. p. 585 n. 47.
Principal and Surety, 32 Cyc. p. 191 n. 91.

Plaintiff appealed from an order of the district court for Dakota county, Schultz, J. denying its motion for a new trial. Reversed with directions.

*Jesse Van Valkenburg,* for appellant.

*Alfred E. Rietz,* for respondents.

STONE, J.

In this action by the village of Farmington upon a supposed bond to secure the deposit of village moneys with the Farmington State

[1] Reported in 218 N. W. 444.

Bank (now defunct and in the hands of a receiver), there were findings and an order for judgment in favor of defendants, who are the depository and its sureties. Plaintiff appeals from the order denying its alternative motion for amended findings or a new trial.

On February 19, 1923, $15,000 of the village paving fund had been deposited in the bank. February 20, 1923, the common council passed a resolution instructing the village treasurer to deposit $15,000 of the paving fund in the defendant bank "on consideration" that it furnish the village with a bond, to be approved by the council, in double the amount of the deposit. On March 12, 1923, that resolution was supplemented by another which permitted the bond to be signed "by the officers of the bank." In compliance with these resolutions, to retain the deposit and comply with law, the individual defendants, all officers and stockholders of the bank, executed and delivered to the village the supposed bond sued upon. It was formally presented to and accepted by the council as the "directors' bond" authorized by its resolution of March 12. Although so labeled, it is not a bond in the technical sense because it was not signed by the bank as principal. It was an undertaking rather than a bond and signed only by the individual defendants. The document recites that they are held and firmly bound unto the village "in the sum of thirty thousand dollars, lawful money of the United States, to be paid unto the said village," for which payment the signers jointly and severally bound themselves. The document then proceeded to state, as "the condition of this obligation," that the $15,000 deposit had been made in the bank, and concluded to the effect that if it was repaid upon proper demand, "then this obligation shall be void, and otherwise in full force and virtue."

The purpose of the resolutions designating the depository, authorizing the deposit, and requiring the bond was to comply with G. S. 1923, § 1841, which authorizes the designation of a bank as a depository of village funds and requires a bond, in at least double the deposit, to be approved by the council, "conditioned to repay all sums deposited therein upon proper demand therefor." It provides that "no such deposit shall be made for a time extending beyond the

term of the council then in office." It thus appears that the result below frustrates not only the clear and expressed intention of all the parties but also the purpose of the law with which they attempted compliance. Obviously a contrary result should be reached if reasonably possible, and we think it is.

1. What was required by law and intended by all was that a real and not a spurious security should be given for the deposit. An undertaking rather than a bond was furnished. Inasmuch as the use of the private seal was long ago abolished in this state, there is no longer room for the supposition that the legislative intent was to require the security to be in the form of a specialty or sealed instrument. With respect to appeal bonds and the others referred to in G. S. 1923, § 9692, required in connection with litigation, an undertaking is expressly permitted in lieu of a bond. True, that statute does not refer as well to depository bonds. But in that is nothing to prevent enforcing as security what was intended to be security by both the parties and the law with which they intended and pretended to comply.

There is no dissent, as a general proposition, from the statement that "a statutory bond may be good as a common-law obligation, although insufficient under the statute because of noncompliance with its requirements, provided it is entered into voluntarily and on a valid consideration and does not violate public policy or contravene any statute." 9 C. J. 27. In this case the obligation of the bank was created by its acceptance of the deposit pursuant to the resolutions of the village council, which not only provided for the bond but also imposed specified conditions with respect to interest. That obligation would not have been increased by the bank's execution of a bond. In substance therefore nothing would have been gained by such execution except to make the security a bond in the technical sense rather than an undertaking. Inasmuch as nothing of substance would have been added, and because otherwise the security furnished by the individual defendants complies with the statute, we find no difficulty in holding that their undertaking should be enforced as clearly they intended it to be enforced—a bond for the repayment of the deposit.

In this connection the comment is apt that under the conventional modern statutes requiring security for the performance of public duties, official or otherwise, "an undertaking on appeal is a species of bond, and the two words are by judges, text writers, lawyers, and laymen commonly used interchangeably." King v. Pony Gold Min. Co. 24 Mont. 470, 480, 62 P. 783, 787. The tendency seems general in legislation to put undertakings on the same footing as bonds, 1 Wd. & Phr. (1 ser.) 834. It would immunize defendants from their intended liability upon a basis of mere nothingness to hold that, although they had intended and expressed obligation, they may escape it because the document they have solemnly signed is, in a technical sense, an undertaking rather than a bond. It is a clear case for holding the undertaking to be in effect a common law bond and so far a compliance with the statute requiring liability as sureties that those who have solemnly tendered themselves as sureties cannot escape liability. That view makes it unnecessary to go into the argument that the security is unenforceable because it does not so far express a consideration as to satisfy the statute of frauds.

2. We find nothing to support the finding that the issue of a renewal certificate and the surrender of the old one marked "paid" resulted in payment of the original deposit. Aside from the statutory disability of the council to authorize a deposit "for a time extending beyond the term of the council then in office," there remains the proposition that a certificate of deposit, being merely a promissory note of the bank, is not presumed to be payment of the obligation created by the deposit. In fact the presumption is the other way. State Bank v. Mutual Tel. Co. 123 Minn. 314, 143 N. W. 912, Ann. Cas. 1915A, 1082; Munson v. Bensel, 169 Minn. 434, 211 N. W. 838; 5 Dunnell, Minn. Dig. (2 ed.) § 7444. In this case the original deposit remained intact except for payments made since the bank went into receivership. There have been no withdrawals and no additions. The original obligation has remained from the beginning, notwithstanding the renewals of the certificates of deposit, and as matter of law has never been discharged by payment.

We are not unmindful of the fact that a deposit in a bank may change its character without "the idle ceremony" of an actual withdrawal of the money followed by its immediate redeposit.' See Bd. of Co. Commrs. v. Security Bank, 75 Minn. 174, 77 N. W. 815. For instance, in this very case, it probably would be held, if that were the point for decision, that the deposit changed its character when the security was furnished by the defendants, for before that it was an illegal deposit. But here continuity of deposit and obligation of repayment remained unbroken from the beginning. To hold otherwise would be in opposition to the law just referred to, that a negotiable instrument, nothing else appearing, is presumed to be taken not in absolute but in conditional payment of the underlying obligation, which at the election of the obligee continues and may be sued upon notwithstanding the negotiable instrument or any number of mere renewals.

3. There has been no release of the individual defendants, as sureties, because of such valid extensions of time as were given their principal, the bank. The sureties did not guarantee an obligation that was to run for a fixed time. The selection of the bank as a depository was for an indefinite period. The security was for the deposit however long it might run. So the sureties cannot complain of any extension so long as the bank continued to hold the deposit under its original designation as a depository. That designation, plus the deposit pursuant thereto, was the transaction with respect to which they furnished security. They are not in the position of sureties of a debt with a fixed maturity and so cannot complain because the deposit has been continued. Furthermore, the continuance of the deposit for as long as might be was what defendants desired and hoped to insure by their security. It would be repugnant to both logic and justice to release them from liability because their plainly expressed desire was accomplished so substantially.

Order reversed and the case remanded for findings of fact, conclusions of law and an order for judgment in accordance with the views above expressed.