## Jesse C. Harrison et al., Appellees, v. Joe Ault et al., Appellants.

Heard in this court at the October term, 1933. Opinion filed December 26, 1933.

KASSERMAN & KASSERMAN and MILO D. YELVINGTON, for appellants.

ALBERT E. ISLEY, for appellees.

MR. JUSTICE STONE delivered the opinion of the court.

Jesse C. Harrison et al. filed their bill in chancery to the April term of the circuit court of Jasper county against Joe Ault and others, for the purpose of enforcing the statutory liability of the stockholders of the State Bank of Yale, to the creditors of said bank under section 6 of the Bank Act, Cahill's St. ch. 16a, ¶ 6. This section provides as follows:

"Every stockholder in any bank or banking association organized under the provisions of this Act shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder."

An audit was made of the bank during the time it was opened for business, namely, from November 30, 1920, to the time it closed, January 3, 1931. This time was divided into periods, such periods being numbered 1 to 17, each period representing the time from one transfer of stock to the next transfer thereof.

James G. Cramer was a defendant. The suit was finally determined adversely to defendants. This proceeding is brought to this court by an agreement of the parties in pursuance of section 104 of our Practice Act, Cahill's St. ch. 110, ¶ 104. The stipulation or agreement between the parties in the matter is in words and figures as follows:

It is stipulated by and between the parties hereto that on July 19, 1926, James G. Cramer deposited in the State Bank of Yale, Illinois, $1,000, receiving as evidence thereof an ordinary time certificate of deposit, payable to his order, with four per cent six months after date upon the return of the said certificate of deposit properly indorsed; that on July 11, 1927, said Cramer again came to said bank, and the bank paid to him the interest on said certificate and $100 in cash and upon the surrender of the certificate dated July 18, 1926, received from the bank another certificate of deposit for $900 dated July 11, 1927; that the bank on said July 11, 1927, received the certificate of deposit dated July 19, 1926, and stamped same ''PAID'' and entered the fact that it was paid upon its certificate of deposit ledger, which was kept by the bank in its regular course of business; that in addition to the regular certificate of deposit ledger, the bank also kept what it terms its cash book; and upon the issuance of any certificate of deposit it was entered therein as a debit of the bank, and upon the presentation of any certificate of deposit that fact was likewise entered and shown upon such cash book as a credit for the amount as indicated by the certificate of deposit;

that the various certificates of deposit issued by the bank to Mr. Cramer were entered in this manner; that on July 23, 1928, Mr. Cramer received from the bank the accrued interest on the $900 certificate of deposit and also $150 cash, and surrendered his certificate of deposit dated July 11, 1927, and received from the bank another certificate of deposit for $750 dated July 23, 1928; that on June 26, 1929, the certificate dated July 23, 1928, was presented to the bank and canceled and the interest paid to Mr. Cramer and another certificate of deposit issued to him for $750; that on July 5, 1930, the certificate dated June 26, 1929, was presented to the bank and Mr. Cramer received the interest thereon and surrendered the certificate which was stamped "PAID" and another certificate issued to him dated July 5, 1930, for $750; that said certificate of deposit dated July 5, 1930, was in the possession of Mr. Cramer and an outstanding obligation of the bank at the time the bank closed by an order of the auditor of public accounts on January 3, 1931; that all other certificates of deposit in said bank were handled in the same manner as the Cramer certificates above mentioned; that the question of law presented for determination is, whether the issuance of other certificates of deposit in the manner outlined by the Cramer certificates operated as payments by the bank of its indebtedness as evidenced by the surrendered certificates executed by the bank and which were returned by the holders to the bank and by the bank stamped "PAID" and other certificates of deposit issued by the bank, and accepted by the holders; and whether or not such transactions created new liabilities against the stockholders holding the stock of said bank at the time of such transaction and released the stockholders from said liability who had prior thereto sold their stock.

The questions of law arising in this cause and so determined by the court were whether the issuance of

other certificates of deposit in the manner outlined in the stipulation operated as payments by the bank of its indebtedness as evidenced by the surrendered certificates executed by the bank and which were returned by the holders to the bank and by the bank stamped "Paid" and other certificates of deposit issued by the bank and accepted by the holders; and whether such transactions created new liabilities against the stockholders holding the stock at the time of such transaction and released the stockholders from such liability who had theretofore transferred their stock.

That part of the court's written decision which is material here is in words and figures as follows:

"And the Court being now fully advised in the premises on consideration thereof finds from the evidence that when the bank received a deposit and issued a certificate of deposit therefor and upon such certificate of deposit becoming due and the bank issuing therefor another, the liability of the stockholder or the bank was not discharged by the issuance of a renewal certificate but the liability of the stockholders of the bank was a continuing one and not discharged until the original deposit was liquidated. The Court finds that a certificate of deposit is simply evidence of indebtedness of the bank and that the issuance of a renewal thereof cannot be held to be a payment of the original indebtedness so as to relieve either the bank or its stockholders from the obligation to pay the liability of the bank and stockholders incurred at the time the deposit was originally made and the Court decrees accordingly."

The whole matter was certified to this court correctly in pursuance of the statute, the parties assenting thereto.

When a bank receives a deposit, all of its resources stand as security therefor. Among the securities are the liabilities of stockholders as defined by the statute. On July 19, 1926, James G. Cramer became a creditor

of the bank to the extent of $1,000. A debt from the bank to Cramer was thereby created which the bank started to pay off on the instalment plan as described in the stipulation. Said debt had all the resources of the bank behind it. Cramer had a right to rely upon this security and presumably did so. The bank could not change the security given to Cramer and put him in a position in which his security was less or inferior without his consent; neither could the security. Even though the bank paid Cramer a part of his debt and gave him a new evidence of its indebtedness to him for the balance, he would still be entitled to the same security which he held for the entire amount of the debt as it was originally made. If this is not true, then between the date of the creation of the original debt of the bank and March 5, 1930, when the last evidence of the debt was issued by the bank to Cramer, the entire stock of the bank might have passed into the hands of persons who were unable to pay their liability and Cramer's security diminished to the extent of the entire stock liability. People cannot be compelled to waive good security and take that which is worthless, without their consent. We are unable to see, in practical effect, where there is any difference in principle, between a bank which issues its paper and thereby becomes a debtor, and a bank which lends money to an individual and thereby becomes a creditor. In the latter case, it has been repeatedly held by our Supreme Court that the mere giving of a note does not of itself extinguish a precedent debt. It must be so as the note is only evidence of the debt. This applies with even greater force to renewal notes. They do not pay the debt, unless the parties agree that they do; they simply make a different evidence of the debt. Could a bank on a renewal note be required to take different security for the debt? Certainly not. No more can a bank on renewal of its obligation as evidenced by its certificate of deposit require its creditor to take other and differ-

ent security. *Village of Farmington v. Reisinger,* 174 Minn. 56, 218 N. W. 444.

The $1,000 placed in the bank July 19, 1926, created an obligation against the stockholders of the bank *then.* That money was never taken out of that bank except $250 of it. The remainder is still there. Can the then stockholders step out from under the liability thus created by a mere transfer of their stock? Obviously not, unless, as urged, the taking up of the certificates of deposit, stamping them paid, changing the books, etc., amounted to payment and discharge of the obligation.

"When a dealer at a bank pays off a note by renewal, the debt is the same—the debt remains unpaid—the credit is extended. As a general rule, the surrender of the pre-existing note does not discharge it." Daniel on Neg. Inst. sec. 205; Edwards on Bills, sec. 290.

This general rule, however, borne out by many authorities in Illinois as it is, must still bend to the proof of the mind of the parties at the time of making the exchange. In *Cheltenham Stone & Gravel Co. v. Gates Iron Works,* 124 Ill. 623, it was held that the taking of a note either of the debtor or of a third person, for a pre-existing debt is no payment unless it be expressly agreed to take the note as payment. In *Rayburn v. Day,* 27 Ill. 46, it was held that the giving of a note and mortgage by one of two copartners in settlement of a joint debt does not discharge an account against the firm unless they were received in satisfaction of it. To the same effect is *Keller v. North American Life Ins. Co.,* 301 Ill. 198. In *Hayward v. Burke,* 151 Ill. 121, it was said: "In order to release the old liability and create a new one, there must be assent on the part of the creditor and of the original debtors and of the persons who assume the debts." Such assent does not appear in this record.

In *Golden v. Cervenka,* 278 Ill. 409, our Supreme Court said: "The meaning of the constitutional provision was that persons who were stockholders of the

bank at the time the credit was extended to it or a liability was incurred by it should be individually and personally liable, as partners, to the creditor to an amount equal to their stock." To the same effect is *Babka Plastering Co. v. City State Bank of Chicago,* 264 Ill. App. 142.

Surely a partner cannot privately sell his share in the partnership and escape liability for the partnership debts incurred while he was a partner. Even if the creditor accepted the notes of the new partnership as evidence of the debt owing him, he could still go back to the partner who sold out if the note should prove worthless.

The bank in this case still has the original money deposited with it by Cramer on the faith of the bank's resources in 1926. A part of the resources upon which Cramer's faith was founded was the liability of the stockholders when the transaction was had. There has been nothing done which amounts to payment of that obligation. There is no satisfying evidence that what was done was intended as payment thereof. In our judgment it was a continuing obligation. The bank still has the money which was placed with it either by contract, deposit, loan or by whatever name it may be called. The stockholders who were such when the obligation was originally created were responsible in part for its being made. They cannot now say that their obligation has been assumed by others.

It is urged that *McCormick v. Hopkins,* 287 Ill. 66, is opposed to these views. We do not so regard that case. The only question before the court in that case was the liability of the surety company under the condition in the bond. It had no application to the liability of either the bank or its stockholders. The court did not there hold that the issuance of a renewal certificate of deposit paid the debt of the bank or the debt of its stockholders. That question was not there involved.

It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which they are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. *Cohens v. Virginia,* 6 Wheat. (U. S.) 264, 399; *Mayer v. Erhardt,* 88 Ill. 452; *Myers v. United States,* 272 U. S. 142.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*